ALFRED ROE et al., Executors, etc., Respondents, *v.* GEORGE T. VINGUT, Impleaded, etc., Appellant.

If, in construing a will, a general scheme can be found to have been intended and provided for which may be declared valid, it is the duty of the court to effectuate the main purpose of the testator.

To accomplish this object the meaning of words and phrases, used in some parts of the will must be diverted from that which would attach to them if standing alone, and they must be compared with other language used in other portions of the instrument; and limitations must be implied, and thus the general meaning of all the language arrived at.

Where a clause is susceptible of two constructions, one of which will render it valid and the other invalid, the former will be adopted.

F. died leaving but one child, a married daughter, her surviving, who, at that time, had five children living. By her will F. devised all her "real and mixed estate" to her executors in trust during the respective lives of G., her son-in-law, and of B., her youngest grandchild, with power to

lease the real estate, to receive and invest the net income and the accumulations arising therefrom in productive real estate for the benefit of the grandchildren of the testatrix living at her death, and of such others as should be thereafter born of her daughter, "during their respective minorities," with directions to apply to the use of the grandchildren so much of the income as the executors should deem sufficient for their education and support during their respective minorities, but no payment to be thus made unless the executors should be satisfied that there was not sufficient income for the purposes specified from the estate of the daughter. The will then provided that on the arrival of the "youngest grandchild" at the age of twenty-one and on the death of G. all the real estate of which the testatrix died seized, and such as the executors may have purchased after her death, should be divided equally among her grandchildren then living; in case of the death of a grandchild leaving lawful issue, such issue to take the parent's share. The executors were also directed to pay over to each grandchild as he or she arrived of age, in case the youngest grandchild and son-in-law were then still living, "a proportionate share of the rents, issues and profits * * * during the lives of said grandchildren and son-in-law." In an action for the construction of the will, *held*, that the words "youngest grandchild," in the limitation upon the trust, referred to B., the youngest grandchild then living; and so, there was no unlawful suspension of the power of alienation, as the trust expires upon the death of G., and the arrival of B. at the age of twenty-one or his previous death; that the scheme of the testatrix was to create a trust term for as long a period as it could be done for the benefit of all her grandchildren, both those born and to be born, and, at the expiration of the term, to provide for a division although a grandchild born after the death of the testatrix should then be under age; that the provisions as to accumulations were to be construed as providing that any of the grandchildren who came of age before the termination of the trust term should receive his or her proportionate share, including a share of the real estate purchased by the executors, and which represented a part of the original rents and profits; that the provision as to a distribution of the real estate so purchased, upon termination of the trust, referred only to so much thereof as may be left after a distribution to the grandchildren previously coming of age; and that, as so construed, the provisions were valid, as is also the provision for the payment of the share of a deceased grandchild in the accumulations to his or her issue, or, failing issue, to the survivors, and the provision prohibiting payments by the executors for the benefit of the grandchildren, unless satisfied that the income from the estate of their mother was insufficient for their support.

Also, *held*, that the will gave to the trustees no power to sell the real estate devised.

(Argued October 11, 1889; decided November 26, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 19, 1888, which modified, and affirmed as modified, a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts are sufficiently stated in the opinion.

*Joseph H. Choate* for appellant. The accumulations directed by the sixth article are void, not being for the purposes permitted by the statute, the statute only permits accumulations during the minority of an infant, for the sole benefit of such infant, to be paid over to the infant, at majority; and that is not the scheme of accumulation here attempted. (*Pray* v. *Hegeman*, 92 N. Y. 508, 517, 519.) This is not the case of a will inartificially drawn which can be so construed as to conform to the statute. No amount of construction, short of making an absolutely new will, can make it so conform. (*Phillips* v. *Davies*, 92 N. Y. 199, 204.) The executors or trustees can derive no power to act from the court. Their sole authority must be derived from the will. (*Gelston* v. *Shields*, 16 Hun, 143, 148 ; 78 N. Y. 275.)

*John J. Macklin* for respondent. As the will expressly declares the intention of the testatrix to be that the estate shall pass in fee to the grandchildren living at her death, as tenants in common, in equal shares, subject to open and let in after-born grandchildren to the benefit thereof, with cross remainders over in the event of anyone dying without issue before such death, the estate vests in possession. (*Vanderpoel* v. *Loew*, 112 N. Y. 167 ; *Goebel* v. *Wolf*, 113 id. 405.) In applying the rule that subsequent provisions may be construed so as to restrict, limit or qualify a preceding devise, such construction does not disturb the trust term further than is absolutely necessary for the purpose of giving effect to the subsequent devise. (2 Jarman on Wills, 46, 48.) The devise is limited by two designated lives in being at the death of the

testatrix, and is lawful. (*Van Cott* v. *Prentiss*, 104 N. Y. 45.)
If the will did not contain any provisions creating a trust
estate in the executors, there could be no question as to the
validity of this devise, and if the trust estate is illegal,
it may be stricken from the will without impairing the devise
contained in the third paragraph. (*Everett* v. *Everett*,
29 N. Y. 39, 79, 82; 15 Abb. N. C. 305; *Smith* v.
*Edwards*, 88 N. Y. 83; 2 Jarman on Wills, 44–59, 68, 617;
3 id. 717; Jarman's Rules, 12, 14, 23, 24.) The trust
estate created by the sixth clause is valid. (*Tucker* v.
*Bishop*, 16 N. Y. 402; 2 Jarman on Wills, 707; 1 R. S
726, 728, §§ 37, 55; *Vernon* v. *Vernon*, 53 N. Y. 351, 357,
359; *Donovan* v. *Vandermark*, 78 id. 274; 1 Jarman on
Wills, 573; *Manice* v. *Manice*, 43 N. Y. 375; *Pray* v. *Hege-*
*man*, 92 id. 508.) The trust provisions, other than those pro-
viding for accumulation, constitute a trust to receive the rents
and profits and apply them to the use of a person during life
or for a shorter period, and is authorized by subdivision 3 of
section 55 of the article on Uses and Trusts (1 R. S. 728, § 55),
and does not suspend the power of alienation for a longer
period than two lives in being. (*Gilman* v. *Reddington*, 24
N. Y. 9; *Woodgate* v. *Fleet*, 64 id. 566; *Belmont* v. *O'Brien*,
12 id. 394; Perry on Trusts, § 378; *Crooke* v. *County of*
*Kings*, 97 N. Y. 421, 439; *Genet* v. *Hunt*, 113 id. 159;
1 R. S. 728, §§ 56–58.) The trust term, as to its duration, does
not exceed, at the utmost, beyond two lives in being. It is to be
construed as bounded by the death of Vingut and the coming
of age of the youngest grandchild. (*Van Alstyne* v. *Van*
*Alstyne*, 28 N. Y. 375; *Quinn* v. *Hardenbrook*, 54 id. 83–86;
*Tucker* v. *Bishop*, 16 id. 402; *Van Cott* v. *Prentiss*, 104 id.
49, 57.) In any view, however, and assuming that the trust
provisions are irreconcilable and cannot be carried into effect
or are illegal, intestacy does not arise. (*Weeks* v. *Cornwall*,
104 N. Y. 336, 337.) While the plaintiffs did not appeal from
so much of the judgment which held that there was not an
implied power of sale, such decision is open to review,
inasmuch as the rights of infant parties are involved. (*Gilman*

v. *Reddington*, 24 N. Y. 9, 20 ; *Phillips* v. *Davies*, 92 id.
199 ; *Livingston* v. *Murray*, 39 How. Pr. 102.)

*William C. Beecher* for respondents. The trusts created by
the will do not offend against the statute of perpetuities.
(*Phillips* v. *Davies*, 92 N. Y. 199–204.) Each grandchild
took a vested estate in his or her respective share of the estate
at the death of the testatrix, the absolute enjoyment alone
being deferred till the termination of the trust. (2 Jarman
on Wills, 417 ; *Tucker* v. *Bishop*, 16 N. Y. 402 ; *Roome* v.
*Phillip*, 42 id. 463 ; *Everitt* v. *Everitt*, 29 id. 39.) The
trustees would hold each child's share as though it were a
separate and distinct trust. (*Stevenson* v. *Lesley*, 70 N. Y.
512 ; *Wells* v. *Wells*, 88 id. 323, 333.) Where in the same
will two inconsistent trusts exist, one of which is invalid and
which was created only to provide for a contingency which
never happened, and which cannot happen, the void trust may
be disregarded, leaving only the valid one. (*Henderson* v.
*Henderson*, 113 N. Y. 615 ; *Tiers* v. *Tiers*, 98 id. 568, 573 ;
*Harrison* v. *Harrison*, 36 id. 543, 547.) The provision
directing the trustees to reinvest the net proceeds of the real
estate, together with the proceeds of her personal property in
productive real estate, and devoting the income of that to
the support of her grandchildren is valid, since the entire
property, principal and interest, is given to the grandchildren
at the termination of the trust. (*Pray* v. *Hegeman*, 92 N. Y.
508, 519 ; *Barbour* v. *De Forrest*, 95 id. 13 ; *Cook* v. *Lowry*,
Id. 103.) In the event of the death of any of the grand-
children of the testatrix during the continuance of the trust
and leaving issue, such issue will stand in the place of the
parents and take their share of the income, and would be pre-
sumptively entitled to the next eventual estate, and would, there-
fore, be entitled to the income of such estate. (*Delafield* v.
*Shipman*, 103 N. Y. 463 ; *Cook* v. *Lowry*, 95 id. 103, 108.)

Peckham, J. This action was commenced by the plaintiffs,
who are the executors of the will of Mrs. Elizabeth F Floyd,

deceased, and trustees under its provisions, to obtain a construction of that instrument.

At Special Term the court held that the trust provided for therein was valid, and that it continued until the youngest grandchild named in the will arrived at age, or his death before that event, and until the death of George T. Vingut, and provision was made for the payment of the accumulations spoken of in the will. The General Term affirmed a judgment entered upon this decision with a slight modification, by which it struck out the provision in that judgment permitting the trustees to sell the real estate which was unproductive, it being held that there was no such power of sale granted to the trustees. From the affirmance of the General Term the defendants have appealed here.

Mrs. Floyd died in November, 1885, leaving the will in question. She was possessed of quite a large estate and she had but one child, a married daughter, the wife of the defendant George T. Vingut. The daughter was, when the will was made and when the testatrix died, the mother of five children, Benjamin Van Horne Vingut being the youngest, and he was born December 23, 1879, and the will was made July 30, 1881. After the commencement of this action, and before the entry of judgment therein, the daughter, Mrs. Vingut, died, leaving the five children surviving her. Her husband, one of the defendants, was appointed her administrator, and the action was continued against him in such capacity as well as individually. The questions to be determined here arise out of the provisions of the sixth clause in the will of Mrs. Floyd, which clause I have subdivided, for convenience of description, into seven subsections. The clause in question reads as follows:

(1.) *Sixth.* I give, devise and bequeath to my executors hereinafter named all real and mixed estate of which I may die seized or possessed, in trust, nevertheless, to have and to hold the same during the respective lives of my son-in-law George Thomas Vingut, and my youngest grandchild, Benjamin Van Horne Vingut, now living, and to receive the rents, issues and

profits thereof, and the accumulations arising therefrom; and after payment of all taxes, assessments, and of so much money as may be necessary for repairs, insurance or improvements or betterments of any or all of my real estate, to invest the balance remaining after such payments in productive real estate in the city of New York, for the benefit of my grand-children, who may be living at the time of my death, during their respective minorities, and for the benefit of such other grandchildren as may be born of my daughter, Sarah Augusta Vingut, after my death, during their respective minorities.

(2.) To apply the said rents, issues and profits of said real estate to the use of my said grandchildren during their respective minorities, in such sum or sums as in the judgment of my executors hereinafter named may be sufficient for the education and support of each or any of them during their respective minorities; but no payment shall be made unless my said executors shall be satisfied that there is not suffi-cient income from the estate of my said daughter, Sarah Augusta Vingut, for the support and education of my said grandchildren.

(3.) And on the arrival of my youngest grandchild at the age of twenty-one years, and on the death of my son-in-law, George Thomas Vingut, I give, devise and bequeath to my grandchildren who may then be living, and their heirs for-ever, all of my real estate, wheresoever situated, of which I shall die seized, or which may be purchased by said executors after my death, as provided for in the sixth clause of this my will, share and share alike, as tenants in common and not as joint-tenants, to have and to hold the same to the said grandchildren and their heirs forever.

(4.) In the event of the death of any of my said grand-children leaving lawful issue him or her surviving, then the share of such deceased parent shall belong to and become vested in such lawful issue him or her surviving.

(5.) In the event of the death of any or either of my said grandchildren unmarried, then the share or shares of such grandchild or grandchildren so dying shall be equally divided,

share and share alike, amongst my remaining grandchildren who may be living at the time of the death of such grandchild or grandchildren.

(6.) I direct and empower my executors hereinafter named, as my said grandchildren shall respectively attain the age of twenty-one years, and my youngest grandchild and my son-in-law may still be living, to pay over to each grandchild as he or she may arrive at the age of twenty-one years a proportionate share of the rents, issues and profits of my estate during the lives of said grandchildren and son-in-law.

(7.) I hereby authorize and empower my executors hereinafter named to rent or lease any part of my said estate for such term or terms of years as in their judgment may seem proper.

The questions propounded are, (1) whether the trust created by the sixth clause is valid; (2) if valid, when does the trust terminate; (3) have the trustees an implied power of sale as to the unimproved real estate owned by Mrs. Floyd at the time of her death. Other questions were stated not necessary to be here mentioned.

As to the first question, the trust is claimed by the defendant George T. Vingut to be invalid on two grounds, (1) because of uncertainty and illegality as to the term of its duration; (2) because it is not a trust for any of the purposes authorized by law.

The will is a most perplexing one. There are provisions in it which, at first blush, are so seemingly inconsistent and contradictory that it appears impossible to arrive at a meaning which can be said, with any certainty, to have been that of the testatrix. While the trusts are in the first subdivision of the sixth clause bounded by two lives in being at their creation, the language thereafter used is such that, if construed without reference to other portions of the will, the trust term is so far extended as to be void, for it is extended until the coming of age of the youngest grandchild, and such grandchild might be born after the death of the testatrix. To adopt the theory of the administrator, defendant, as to the meaning of the will,

and to say that it means to and does provide for an illegal
extension of the trust term, is to do violence to some of the
language of the will just as much as is done to some of the other
language thereof when the trust is construed to be legal. In
either event the strict language used in some portions of the
instrument must give way for the purpose of arriving at the
meaning of the testatrix based upon a perusal of the whole
document. Upon such perusal, if a general scheme can be
found to have been intended and provided for in the instru-
ment, and such general scheme is consistent with the rules of
law, and so may be declared valid, it is the duty of courts to
effectuate the main purpose of the testatrix. To accomplish
such object the meaning of words and phrases used in some
parts of the will must be diverted from that which would
attach to them if standing alone, and they must be compared
with other language used in other portions of the instrument,
and limitations must be implied, and thus the general meaning
of all the language must be arrived at.

It is very truly observed in the able opinion in this case
delivered by the learned judge at General Term, that where
it can be done without violence to the intention of the testator,
that one of two possible constructions will be given to a clause
which will sustain the intended devise rather than the one
that will defeat it. The intention to create a trust for the
benefit of the grandchildren of the testatrix, including those
that might be born after her death, is plainly stated in the
will. The draftsman would seem to have been familiar with
the rule as to the utmost length of a valid trust term. Such
a term is created in the first subdivision of the sixth clause.
It is during the respective lives of the son-in-law of the testa-
trix and her "youngest grandchild, Benjamin Van Horne
Vingut, now living." The daughter of the testatrix was a
comparatively young married woman, and the testatrix knew
the possibility, if not probability, of the daughter having
other children, and perhaps after the death of the testatrix;
and she, undoubtedly, had in her mind the benefit of all the
children of her daughter as well those who might hereafter be

born as those already in existence. Having created the trust for as long a time as she legally might, she proceeded to state for whose benefit it was created and how it should be conducted, and to give instructions as to who should be the recipients of the *corpus* of the estate after the termination of the trust. The rents of her real estate, after paying taxes, etc., were to be invested in productive real estate for the benefit of her grandchildren living at the time of her death during their respective minorities, and for the benefit of such other grandchildren as may be born of her daughter after the death of the testatrix during their respective minorities, and on the arrival of the youngest grandchild at the age of twenty-one years and the death of her son-in-law, she gave and devised to her grandchildren, who were then living and their heirs, all her real estate, wheresoever situated, of which she died seized or which should be purchased after her death, etc. Read by itself, this portion of the will might be claimed to be unambiguous, and to mean that the trust estate is to continue during the minority of the youngest grandchild who might be born of her daughter after the death of the testatrix. The first subdivision of the clause states that the trust is for the benefit, not alone of the living grandchildren, but also for those who might be born after her death, and the third subdivision states that the estate is to be divided on the arrival of her youngest grandchild at twenty-one years of age, and the death of her son-in-law. The youngest grandchild might be a grandchild born after the death of the testatrix, and hence not in being at the creation of the trust. Bounding the trust term by such a life, the term would be in violation of the statute and would be void. But if the testatrix, in speaking of her youngest grandchild, meant the youngest grandchild that she had already named and referred to as living, then the trust term would be valid. I think that she referred to the grandchild upon whose life she had already fixed as one of the two which should limit the trust term. The testatrix had all her grandchildren in view, without doubt, when she made this will, both born and to be born;

but it must be assumed, by reason of the fact that a valid trust term for as long a time as was possible is first created, that it was known to be impossible to create a valid term if it were to be limited upon a life not in being at its creation. There-fore, the scheme would seem to have been to create a trust term for the benefit of all her grandchildren, both born and to be born, for as long a time as it could be done, and then, when such term should end, the division must be made, although a grandchild born after the death of the testatrix should then be under age.

If the provisions of the sixth clause, other than the first subdivision, are read in close connection with the first, it is quite easy to see that an implied condition runs all through them, and that all the contingencies therein provided for are based upon the termination of the trust term as provided for in the first subdivision (or by the arrival at the age of twenty-one of Benjamin, and the death of George T. Vingut), and this implied condition renders the term valid. Subject, therefore, to such a termination of the trust estate, it would con-tinue for the benefit of the grandchildren then living during their respective minorities, and also for the benefit of the other grandchildren born after the death of the testatrix during their respective minorities.

But it is contended that there is an invalid trust to accumu-late during the minorities of the grandchildren an estate which is not to be paid over to such grandchildren at their respective majorities, and which, on the contrary, may be paid to other persons. Resort is again had to the third subdivision of the will to prove such statement. It is there provided that on the arrival of the youngest grandchild at twenty-one, and upon the death of the son-in-law, the estate is to be divided between the grandchildren who may then be living and their heirs for-ever, so that, as is claimed, the accumulations arising during the minorities of the respective infants may not be paid over to those for whose benefit they ought to have accumulated, but will be paid only to such of them as should be living at the time when the youngest grandchild (born or unborn at the

death of the testatrix), should come of age, and to the issue of such as should previous to that time have died leaving issue.

In this way, it is said, the accumulations during the minorities of five infants may go to but one, which is not permitted by the statute. But this result is arrived at by insisting that the only gift of the accumulations is provided for in this already mentioned third subdivision of the sixth clause. If the accumulations have, on the contrary, been otherwise and legally provided for up to the time of the division of the estate, pursuant to such third subdivision, of course this argument falls. I think that they have. On looking at the sixth subdivision, I think the meaning is that so long as the youngest named grandchild (Benjamin) or the son-in-law, shall be living, the executors are to pay to each grandchild, at and after he arrives at the age of twenty-one years, his or her proportionate share of the rents, issues and profits of the estate of the testatrix. It seems to me that the expression "proportionate share of the rents, issues and profits of my estate," includes, and was meant to include, the accumulations arising from the rents, etc., of the original real estate of which the testatrix died seized, although such rents or some part thereof were themselves invested in real estate. The real estate which was thus purchased with a portion of the rents and profits of the original estate of the testatrix represented, and in reality was a part of, such original rents and profits; and upon the arrival of such grandchild at twenty-one he was entitled to his proportionate share of such real estate thus purchased.

The provision in the third subdivision devising the real estate which may be purchased after the death of the testatrix, as provided for by her in the first subdivision, when taken in connection with her language in the sixth subdivision, must be understood to include only such real estate as shall have been purchased by the executors, and shall be in their possession after a proportionate share thereof shall have been conveyed to the respective grandchildren who arrived at the age of twenty-one years, as provided for in the sixth subdivision.

I recognize the fact that, in order to obtain this reading,

it is necessary to make some alteration in the third and sixth
subdivisions, and to supply some omissions. But in doing so
it only serves to carry out the main purpose of the testatrix,
which may be spelled out from the will itself. Governed by
the same reasons which obtained in the earlier part of the dis-
cussion, I think the words in the sixth subdivision, "my
youngest grandchild," mean the youngest already mentioned
in the first subdivision, and the word "and" should be read
"or," so that the clause would read that the executors, as her
grandchildren, respectively, attained twenty-one years, and
"my said youngest grandchild *or* my son-in-law shall still be
living," should pay a proportionate share of such rents during
the lives of said "*grandchild*" and son-in-law. I use the word
*grandchild* instead of "grandchildren," as used in the will,
because I think it plain that the latter word is a mistake, and
that the payment was to be continued only during the lives
of the son-in-law and the youngest named grandchild, or, in
other words, only during the existence of the trust.

To the language used in the third subdivision is added the
condition already noticed, that the purchased real estate, which
is there intended, is only that portion which may be left after a
distribution to the grandchildren coming of age, as provided
for in the sixth subdivision. By this construction the grand-
child coming of age is entitled to take his share of the amount
which had accumulated out of the income during his minority,
whether invested in real estate or not; and to receive there-
after during the lives of the youngest named grandchild (Ben-
jamin) and the son-in-law his share of the income as it should
arise.

The claim upon which the argument for the administrator,
defendant, is based is that the division of accumulations is not
to be made until the arrival of the youngest grandchild at age,
and the death of the son-in-law, and that then it is to be made
between the grandchildren who may then be living, and the
estate is to be tied up by those accumulations, not during the
minority of each infant, respectively, and for its benefit, and
to be paid to him on his coming of age, but for the purpose of

distribution at the death of the son-in-law and the coming of age of the youngest grandchild among those who shall then be living and the issue of such as shall have died leaving issue. This construction leaves out of view the provision of the sixth subdivision, by which, if we are right in our view of the language there used, the accumulation there provided for is to be paid over (his proportionate share thereof), to each infant as he arrives at the age of twenty-one. By the fourth and fifth subdivision provision is made for the payment of the share of a deceased grandchild to its issue, or failing that, to the survivors. Such a provision for the disposition of an accumulation for the benefit of an infant, in case of his death, is good.

In referring to the Revised Statutes (1 R. S. 723, §§ 15, 16, p, 726, § 37), relative to perpetuities and accumulations, Rapallo, J., in *Manice* v. *Manice* (43 N. Y. 303, 375), said: "These sections, read in connection, precisely cover the case of a disposition of the ultimate fee, after the expiration of two lives, in favor of a minor, an accumulation during his minority, and a contingent remainder over, if he should die during minority."

There can be little question as to the validity of the disposition in favor of the issue or the survivors of the grandchildren in case of the death of any of them prior to the time when the division comes to be made, if it be decided that by the sixth clause a division of the accumulations as each infant reaches his majority, is provided for, and that it is not limited to a mere division of the rents and profits, excluding the real estate which was purchased with a portion of such rents. The whole force of the argument is based upon the assumption that the third subdivision is the only one which in any way provides for the division of the accumulations, and, of course, if that be not correct, when the foundation goes the argument built upon it goes also.

There is, however, another objection to the validity of the scheme of accumulation. It is said that, by the terms of

the will, no payment shall be made by the executors unless they shall be satisfied that there is not sufficient income from the estate of Mrs. Vingut for the support and education of the grandchildren. We think the General Term took the correct view of this objection.

As the testatrix could accumulate the whole of the income for the benefit of the infant, why could she not say that if any part should be necessary to be applied for its support and education the trustees could do it? And why might not such necessity depend upon the infant not having enough means from other sources for its proper support and education? I am unable to perceive any invalidity in this clause.

We are also of the opinion that the trustees took no power of sale of the unimproved property. However desirable it might be to sell such real estate, we are unable to see that the trustees have been intrusted with the power.

We are impressed, in common with the courts below with the exceeding difficulty attending a construction of this will. A construction quite inconsistent with that which has been here adopted might be supported by many and weighty arguments. It would, perhaps, come as near to the intention of the testatrix as the one we have adopted. But it would also render the trust illegal and utterly destroy the provisions of the will. The construction which has been herein adopted brings us, as we think, quite as near the intention of the testatrix as the other would have done, and neither construction can be said to do violence to her intention, so far as that intention can be discovered from a most attentive examination of the instrument itself. This makes it a strong and clear case for the application of the doctrine already alluded to, and brings us to the point of adopting that construction which, while doing no violence to the intention of the testatrix, at the same time sustains the trust and the devise mentioned in the will, rather than defeats them.

We think the trust is valid, and that it terminates upon the death of the son-in-law and the arrival at the age of twenty-one years (or earlier death) of the grandchild, Benjamin

Van Horne Vingut, and that the trustees have no power of sale.

The judgment of the General Term should be affirmed, and the costs of all parties paid out of the fund.

All concur.

Judgment affirmed.