MAYHAM, J., concurred.

Decree modified according to opinion; costs of appellant to be paid out of the estate; order to be settled by PUTNAM, J.

---

IN THE MATTER OF THE JUDICIAL SETTLEMENT OF THE ACCOUNTS OF HARRISON C. MAINE, AS EXECUTOR OF CLARK MAINE, DECEASED.

*Will — legacy — when interest is payable thereon.*

A testator, by his will, proved in November, 1885, bequeathed $5,000 to his daughter, Mrs. Baker, and to her children, which sum he directed should be invested in a house, to be deeded by his executor to her for life, and upon her death to be sold and the avails to be divided equally among her children. The

testator further directed that Mrs. Baker and her husband might reside upon his farm in Russell so long as her husband fulfilled the terms of a certain lease, and that immediately upon the sale of the farm, and the receipt by his executor of sufficient money for that purpose, the executor should purchase a home for Mrs. Baker and her children. and that until he did so purchase he should pay her interest on $5,000; and that, in case she and her husband left the farm before a home was purchased, the executor should pay interest upon said sum of $5,000.

Mrs. Baker died in July, 1886, while residing upon the farm, and her husband, with her children, remained there until November, 1886. The executor never purchased a home for them under the provisions of the will.

Upon a settlement of the executor's account:

*Held*, that the children of Mrs. Baker were entitled to interest upon the legacy from November, 1886, to the time of the accounting, and annually thereafter, until the legacy was paid.

That the rule that interest is not payable upon a legacy until it is due had no application to this case.

That, upon the death of Mrs. Baker, the bequest vested in her children, and that they were entitled to the interest in her right, though it was not specifically stated in the bequest that they were to be so entitled thereto.

APPEAL by Harrison C. Maine, as executor of Clark Maine, deceased, from a decree entered in the office of the surrogate of the county of St. Lawrence, on the 2d day of May, 1891, except from so much thereof as adjudged that the executor retain the sum of $100 for his costs and expenses of the accounting upon which the decree was made.

*John C. Keeler*, for the executor, appellant.

*A. Z. Squires*, for the infants and their general guardians, respondents.

MAYHAM, J. :

The testator, Clark Maine, died in the year 1885, leaving a last will and testament in which he nominated and appointed Clark C. Main as executor and trustee, which will was admitted to probate by the surrogate of St. Lawrence county, on the 9th of November, 1885, and the executor named therein thereupon duly qualified and entered upon the discharge of his trusts.

On the 15th of December, 1890, the executor filed an account with the surrogate and asked that the same be judicially settled by and before the Surrogate's Court of St. Lawrence county. To the

account, as filed, the respondents Mina, Minnie and Mabel Baker, infants, by their guardians, filed certain specific objections, and the surrogate, after hearing the proofs and allegations of the parties, made a decree, the substance of which appears in his summary statement, from which decree this appeal is taken. The main contention on this appeal arises out of the construction of certain provisions of the testator's will.

By the terms of the will the testator gave to his wife, after his debts were paid, the exclusive use and occupancy of his home lot of about twenty acres, with the rents and profits of the same, and all his personal property on the same at the time of his death, to have and to hold such real and personal property during her lifetime; and gave also to his wife an annuity of $200, which he directed his testator to pay to her annually during her life.

The testator also bequeathed absolutely and contingently to various legatees the sum of $12,200, among which bequests was one of $5,000 to his daughter, Ella L. Baker, or her children in case of her death. The real controversy here is as to the provisions in the decree which directs the executor to pay to the respondents, who are the only surviving children of Ella L. Baker, to whom the testator bequeathed this legacy of $5,000, and who died soon after the testator, the interest on this $5,000 legacy after they removed with their father from the Russell farm, November 1, 1886, up to the time of this accounting, and annually thereafter until the principal sum shall be paid. The language of the will upon the subject of this bequest is as follows:

" I give and bequeath to my daughter, Ella L. Baker, and to her children, whether now born or hereafter born, the sum of $5,000, which said sum I direct my executor hereinafter named (or any other person lawfully acting in his stead and concerning my estate) to invest in a home to be concurred in and approved of by her, and to be deeded to her and her children, and to be held by her during her lifetime, and then to descend to her children, to be divided or sold, and the avails thereof to be divided between them, share and share alike; and I further direct that the said Ella L. and her husband, Byron Baker, have the right to continue in the use of my farm of about 338 acres in Russell, in said county, with the personal property thereon, so long as they fulfill the conditions of a certain

lease to said Byron Baker, dated November 15th, 1884, and signed by said Baker and myself; and I direct that, immediately on the sale of said farm and property, and on receipt of a sufficient sum of money for that purpose, my said executor shall purchase such named home for my said daughter and her children, and that, until such home is purchased and ready for her, he shall pay to her annually the interest on said sum of $5,000 ; and in case she and her said husband, Byron Baker, cease to remain on and occupy said property previous to the sale thereof ' thereof,' then, and in that case, my said executor is to pay such annual interest until such sale is made, or such home is purchased for her from other means "

On the hearing before the surrogate it was stipulated between the parties, among other things, as follows: " That at the time of the testator's death his daughter, Mrs. Ella L. Baker, was residing on the 338-acre farm in Russell, and that she, her husband and children continued to reside there until Mrs. Baker's death, July 2, 1886, and that thereafter her husband and children continued to reside on said farm until November 1, 1886, when they removed therefrom."

" That the real estate left by the testator was the 338-acre farm in Russell, the Marshville home lot left to his widow for life, a half interest in the Chilton farm in Russell, containing 140 acres, subject to the life estate of Mrs. Chilton, who is still living."

That in 1887 there was an agreement made between the executor, the widow of the testator and Mrs. Clarinda Fellows, whereby Mrs. Fellows was to have the Marshville property in payment of her legacy of $2,000, and sixty dollars interest then due. That the executor was to take care of the testator's widow during her life, and that at the death of the testator's widow Mrs. Fellows should pay the estate the sum of $440, the interest on the legacy, in the meantime, to be applied towards the support of the widow; that the executor conveyed in fee to Mrs. Fellows the Marshville property January 7, 1887, and that since then she has been in possession thereof; the testator's widow is now aged seventy-six years, and that no other real estate has been sold, and that the executor has not charged himself, in his accounts, with the real estate sold to Mrs. Fellows."

Upon these facts the surrogate made a decree, in the summary statement of which he charged the executor with the sum of $10,961.68, the amount of the inventory and accumulations thereon, and credited him with disbursements in all amounting to the sum of $9,029.05, leaving a balance in his hands and chargeable to him at the time of the accounting of the sum of $1,872.63, out of which the decree provided that the executor should retain the sum of $100 for his costs and expenses, and pay to the guardian of the respondents the sum of seventy dollars for his costs and expenses on the accounting, and out of the balance so found in his hands the executor should pay to the general guardian of the respondents the sum of $1,200, as interest on the $5,000 legacy from November 1, 1886, the time they removed, with their father, from the Russell farm, to November 1, 1890, and that the executor retain the balance of $302.63 to be paid out according to the provisions of the will, and accounted for hereafter.

It is contended by the appellant that the learned surrogate in making his decree failed to give effect to all of the provisions of the will, and did not carry out the intention of the testator as expressed in that instrument; and that it was error to hold that the respondents were entitled to be paid interest on their legacy from the time of the removal of their father from the Russell farm. While, in some of its provisions, this will is obscure and the intention of the testator not clearly expressed, yet in the provisions relating to the legacy to Ella L. Baker and her children there seems no ambiguity.

The scheme of the testator, as to that bequest, is quite apparent. He bequeaths to her absolutely the sum of $5,000, but directs that it be invested by his executor in the purchase of a home for her, and directs the executor, on the sale of the Russell farm and property, and on receipt of sufficient money for that purpose, to purchase such home; then follows the two conditions on the happening of each of which, interest is to be paid by the executor on this legacy. First After the sale of the property and farm, and until such home is purchased and ready for her, he shall pay her annually interest on the legacy. Second. In case she and her husband shall cease to remain on and occupy said property previous to the sale thereof, then, and in that case, my said executor is to pay such annual

interest until such sale is made or such home is purchased from other means.

Under these provisions the evident intention of the testator was to forbear the payment of interest on this legacy so long as his daughter and her husband occupied the Russell farm under the existing lease. If the same was sold so that she could no longer enjoy the use of. that farm, then until its place was supplied by the purchase by the executor of another home for her, she and her children were to be paid annual interest on this $5,000. Or if she and her husband ceased to remain on and occupy this farm, if the same was not sold, then, and in that case, the executor was required to pay the annual interest on this legacy until the home was purchased with the proceeds of the sale of the Russell farm or from some other means.

We find no other provision of this will which stands in the way of, or is inconsistent with the foregoing interpretation. The appellant, as executor, had it in his power to stop the payment of this interest out of the bulk of the estate by selling the Russell farm and investing in the purchase of a home for these legatees under the provisions of the will. This authority is clearly conferred by the terms of the will; and failing to do so, his duty to pay interest on the happening of the events above suggested is clearly enjoined in that instrument. We are referred by the appellant to the cases of *Ritch* v. *Hawxhurst* (114 N. Y., 515); *Roe* v. *Vingut* (117 id., 212); *Goebel* v. *Wolf* (113 id., 412) as authority upon the construction of a will, where the provisions are ambiguous; that the whole will must be read together to ascertain the intention of the testator.

That rule is well-settled by a uniform line of decisions, but it is equally well settled that when the language of a provision of a will is unambiguous it must be construed according to its natural import.

In *Ritch* v. *Hawxhurst* (*supra*) BRADLEY, J., says: "When the language of a provision of a will is plain and free from ambiguity, effect must be given to its import." It is also insisted by the appellant that this $5,000 legacy is a general legacy, and, as such, it can have no preference over other general legacies given in the will. That contention would be sound if interest were not given by the express terms of the will on this particular legacy under and in pursuance of the provisions above referred to.

But, as we have seen, after the legatee and her husband cease to occupy the Russell farm, the executor is required to pay annual interest on this legacy, whether the Russell farm is sold or not, until a home is purchased.

It is also insisted by the appellant that interest is not payable until the legacy itself is due, and as the legacy is not due until the farm is sold, or the money realized from some other source, the legacy is not, by the terms of the will, payable. While this, as a general rule, may be true, yet the special provisions of this bequest takes it out of that class of cases and makes the interest payable before the legacy falls due.

We have discussed this case thus far upon the theory that Ella L. Baker was living and to be the recipient of this interest. Does the fact of her death, or the 'devolution of her interest upon her children, change the obligation of the executor in reference to the payment of this interest?

On the death of the testator the legacy vested in Ella, who survived him, although the payment of the legacy may have been postponed pending the sale of the Russell farm; Ella had, by the will, but a life estate, and, on her death, the bequest, which was primarily to her, vested in the children.

There is nothing in the provision of the trust created in this will that postpones the payment of this interest. The trust is for the payment of the testator's just debts and the legacies thereinbefore specified, with full power to sell and dispose of the estate at public or private sale, at such times and in such manner as to him shall seem meet. Then follows the provision for his purchase of the residue of any interest in any lands in that county in which he has an interest, with the consent of two-thirds of his children.

This provision does not seem to qualify or restrict the duty of the executor to pay this interest to the persons entitled to the interest of Ella on the happening of the event which, by the terms of the will, made it payable. It is true that the children of Ella are not mentioned in connection with her name in this provision relating to the payment of interest on this legacy, but as the whole interest bequeathed to her was, on her death, to be divided between them equally, there seems to be no reason why that clause did not, on her death, enure to their benefit. We are, therefore, of the

opinion that the decree of the surrogate is right and should be affirmed.

Decree affirmed, with costs to the respondent payable out of the estate.

LEARNED, P. J., and KELLOGG, J., concurred.

Decree affirmed, with costs.