## THE LAW OF ALIENATION AND PERPETUITIES IN OHIO.

Common Pleas Court of Richland County.

LEOLA SAGER AND SARAH RUTH PRITCHARD V. HARRY
J. BYRER ET AL.[*]

Decided, 1921.

*Wills—Intent of Testator Held to be Discoverable in Spite of his
Mental Peculiarities—Common Law Rule as to Perpetuities not
in Force in Ohio.*

1. The will in question, while showing some eccentricity on the
   part of the testator, is sufficiently clear and explicit to indicate
   an intention on his part to devise his real estate to his widow
   and children for life, the remainder to go to his grandchildren
   as a class.

2. This disposition is not affected by the provision that possession by
   the grandchildren is postponed until they reach the age of thirty
   years, and then only on condition that they qualify as distributees
   to a designated standard of character and habits of life. The
   interest of grandchildren, then in being and who might be there-
   after born, vested at the death of the testator, subject to divest-
   ment in the case of any who might fail to qualify as distributees.

3. The provision for a sale of the real estate so devised and a division
   of the proceeds among the favored grandchildren, does not render
   the bequest one of money or personal property which would be
   rendered void by the common law rule as to alienation and per-
   petuities.

*Brucker, Henkel, Mabee & Brucker,* for plaintiffs.

*Judge L. A. Henry* and *J. L. Stern,* of Cleveland; *McBride &
Wolfe,* of Mansfield, for defendants.

GALBRAITH, J.

Plaintiffs bring this action, asking for the construction of the
last will and testament of Henry J. Byrer, deceased, which was

---

*Affirmed by the Court of Appeals for Richland county; motion to
require the Court of Appeals to certify its record overruled by
the Supreme Court, March 7, 1922.

duly admitted to probate in Cuyahoga county, Ohio, on September 20, 1907; and in anticipation of a construction favorable to their contention, they also ask for an accounting.

The estate now consists of real estate located in Cleveland, of a value of about $40,000, and decedent had real estate in Richland county and certain personal property, shortly prior to his death, which was otherwise distributed, of an additional value of approximately $20,000.

The petition herein was filed July 8, 1918.

It appears that all necessary parties are properly before the court either by answer, or, if in default for answer, by proper service.

Separate and joint answers of the several defendants assert various defenses, as follows:

(1)   That the court has no jurisdiction of the subject matter, because all of the land in controversy is located in Cuyahoga county.

(2)   That plaintiffs have no right to maintain the action, because the demand made upon the trustee—the Citizens Savings & Trust Co.—was limited to the construction of a single item of the will, while this action seeks construction of several items or the entire will.

(3)   That the right to maintain an action for construction is barred by the ten year statute of limitations.

(4)   That this court has no jurisdiction of the person of one of the necessary party defendants—Harry J. Byrer—because he is a non-resident of the state and was only summoned by publication.

(5)   That the devisees under the terms of the will were either all in being or the immediate issue of all in being.

(6)   That full accounting in the estate has been had in the probate court of Cuyahoga county, Ohio.

And questions of estoppel, and forfeiture under the terms of the will, which are presented in the answer of C. E. McBride, guardian *ad litem* for the minor grandchildren, and in the amendment to the answer of the defendants, Edmund K. Byrer, Dolly L. Byrer, Harry J. Byrer and Carrie E. Byrer.

These two latter defenses are reserved for reference later herein.

Upon motions and demurrers this court has already elim-
inated the matters of defense set forth above as defenses (1),
(2), (3) and (4), and, in the court's opinion, nothing further
need be said thereon than was said in the written opinions on
file.

Coming then to the general issue, and which would include
the defense referred to above as (5)—the parts of the will
first, and for the general purpose, necessary to refer to (sep-
arated, transposed and numbered by the court for its own con-
venience for reference), are as follows:

"(1)   I set apart the following properties, to-wit, sub-lot
10, and the west half of sub-lot number 11, situated on Clinton
ave., N. W., with frame house on said No. 10, my old home
and part of sub-lot No. 103, twenty feet front situated on Dun-
ham with frame building on said lot, now 66 Street N. E.   My
executors shall turn over and deliver these two properties to
the Citizens Savings & Trust Company of Cleveland Ohio.   The
said Citizens Savings & Trust Company shall hold these two
properties in trust only.   They shall keep them well insured
and in good repair, pay taxes, take out their pay; the balance
or surplus they shall divide equally between my two daughters,
Leola M. Stickle and Sarah Ruth Pritchard so long as they live
and when one of them dies, pay all to the remaining one so
long as she lives.   If both die before my sons, the income shall
then be paid to my two sons, Edmund K. Byrer and Harry J.
Byrer, or to one, if alive.   If both are dead, it shall be paid
to the two widows, Dollie Byrer and Carrie E. Byrer.   If all
are dead, the bank shall credit the amounts to my estate in
the savings department."

"(2)   And I set apart the following real estate for the sup-
port of my wife as long as she lives and remains my widow
and no longer.   I hereby set apart and reserve for her main-
tenance sub-lots No. 12, and the East half of sub-lot No. 11
with double house, situated on Clinton Ave., N. W.; also the
part of sub-lot No. 210 Russell now 70th Street, N. E., with
double house bought of Mr. and Mrs. Michael J. Kelley, also
sub-lot No. 8 in W. J. Crawford's and others sub-division of
part of original lot No. 392 situated on Kenmore Ave., N. E.
Out of the income of these properties my wife shall keep them
well insured, pay taxes and repairs and the balance she shall
use for her living expenses and for no other purposes.   Should

the income be in excess of my wife's expenses of maintenance she shall deposit the balance in bank in the name of my estate and only to be withdrawn by her if actual necessity requires it for her comfort and support.''

''(3)    After the death of my wife, my desire is that my executors turn over to the Citizens Savings & Trust Company of Cleveland sub-lot No. 12 and the east half of sub-lot No. 11, with double frame house on said lots situated on Clinton Ave., N. W. to hold said sub-lots No. 12 and No. 11 in trust only, and to manage the same as they do sub-lot No. 10 and the west half of sub-lot No. 11 Clinton Ave., N. W., and sub-lot No. 103 twenty feet situated on Dunham (now 66 Street), keep in repair, pay taxes, insurance, and the bank's commission and pay balance to my two daughters, Leola M. Stickle and Sarah Ruth Pritchard, and followed as directed above.''

''(4)    Sub-lot number 8, forty feet on Kenmore Ave. N. E. and also the part of sub-lot number 210 Russell (now 70th Street) shall go to my two sons, Edmund K. Byrer and Harry J. Byrer equal after my wife's death. If my two sons are dead, then The Citizens Savings & Trust Company shall hold them and they shall go to my grand-children as my will describes.''

''(5)    The real estate set aside and reserved with the income going to my two daughters Leola M. Stickle and Sarah Ruth Pritchard, after all those who are benefited by this property held in trust by The Citizens Savings & Trust Company are dead and past to the beyond, then the said trust company shall continue to hold the property until the oldest child at proper age is entitled to its share of this property. (The property shall then be sold at private sale to the highest bidder for cash, and paid to the grandchildren as they become to the age and requirements of my will.

''No grandchild who is a common woman or a whore or smokes or uses tobacco or a grandson who smokes or uses tobacco in any form or drinks beer or whiskey or any intoxicating drinks of any kind or is profligate or goes into saloons or places where intoxicating drinks are sold, or are doless men and no energy to make something of themselves, shall forever be debarred from receiving any money out of my estate. And all grandchildren who can prove themselves clear and clean of all these filthy habits shall be heirs to my estate, and each one must under oath before the Probate Court where this will was probated make oath that they are free and clean and clear of these filthy habits. And each child shall furnish five good respon-

sible male citizens who will make oath that this grandchild is clear of these habits and comes fully under the requirements of this my will.

"All grandchildren being eligible to receive money out of my estate must have arrived at the age of thirty years before they will be allowed to receive any part of what may be coming to them.

"When the witnesses come before the Probate Court and judge they shall be closely questioned as to the character of the child and the conditions of my will shall be read to them to inform them what they are expected to testify to."

The foregoing quoted portions of the will are all that are necessary to consider for a determination of the contentions of plaintiffs—whether the will violates the rules as to alienation and perpetuities, and is also too indefinite and uncertain to permit of its being carried out according to the possible intentions of the testator.

It is possibly well to here suggest that the will under consideration is composed of only two items; the first—the usual form as to payment of debts consisting of three lines; and the second containing all of the dispositive provisions, consisting of nearly seven typewritten pages, which includes minute directions as to division of household goods and some personal effects between testator's widow and children, several specific monetary bequests and reasons therefor, reference to contracts between the testator and his wife, provision for burial vault for family and its maintenance, directions as to whose bodies may be placed therein and how such bodies shall be prepared and incased, special provisions as to the continuance or removal of the Citizens Savings & Trust Co. as trustee, a residuary clause as to specially undevised remaining property, in fee, to his sons Edmund K. Byrer and Harry J. Byrer with directions as to equalizing and especially if either or both were indebted to the estate for loans or advancements; also a forfeiture clause in case of litigation by any of testator's children, which will be referred to hereafter.

Taking the will as a whole it is in many ways peculiar and

it shows itself to be the product of one of peculiar mentality, and this is made more apparent from the extrinsic testimony which was presented.

The daughters, the plaintiffs, not only by the allegations in their petition but by their testimony—especially in their deposition on file—seek to show that their father, the testator, was of unsound mind and unduly influenced, but, in the opinion of the court, have absolutely failed to do so; and the testimony of others who were in close contact and closely associated with testator convinces this court that the testator, while undoubtedly peculiar or eccentric, and perhaps unfatherly in some respects, was a man who knew just what he wanted to do and was able to engineer or direct the carrying out of his wishes up to within a few days, possibly, of his death.

Regardless of that—this is not a will contest; plaintiffs let their day go by for a statutory contest; for over ten years they acted with the others in the carrying out of the provisions of the will in question, and then at this late day, for the reasons which are clearly apparent from their deposition—that the real estate in which they have a life estate has ceased to meet their needs or is not productive—they seek, under name and guise of a will construction to have their father's will set aside so that they may participate in the proceeds of a sale of the entailed real estate and frustrate the wishes of the testator.

To the mind of the court the will is sufficiently clear and explicit, as to the desired and directed disposition, to make it unnecessary to resort to extrinsic evidence for its construction.

One of the most important of the rules governing the construction of a will is that a general intent, clearly indicated, will control a particular intent. (Woemer on Law of Administration, Sec. 416.)

Another rule—"A construction that will render a will valid will be adopted if within the boundaries of reason in view of the language of the instrument, rather than one that will render it invalid." *In re Denges,* 103 Wis., 497; *Fussy* v. *White.*

113 Ill., 637; *Roe* v. *Vingert,* 117 N. Y., 204; *Becker* v. *Chester,* 115 Wis., 90 Ct., 119.

Clearly, to the mind of the court, from the language of the will, taking it from "the four corners," the testator intended to and did direct that his different parcels of real estate should pass to his wife, his daughters, and part to his sons, for life, with remainder to his grandchildren.

He suspends the right of possession of the grandchildren until they arrive at the age of 30 years, and he vests the possession, in trust, for the grandchildren, if it becomes necessary from the death of all life tenants before the grandchildren all arrive at such age, in the Citizens Savings & Trust Company of Cleveland, Ohio.

These provisions do not seek to suspend the right of property, but only the right of possession.

Clearly, to the mind of the court, from the language used the testator passed a vested remainder in the fee *to his grandchildren as a class,* which vested in the grandchildren, by force of the will, at testator's death.

"The law favors the vesting of estates, and a devise of real estate will be deemed vested at the testator's death unless the contrary is so clearly expressed that the terms of the will would be otherwise opposed. To this end words of seeming condition will, if possible, be deemed to postpone possession only, and not present right. *Linton* v. *Laycock,* 33 O. S., 128.

"A devise to testator's children for life then to be divided among his grandchildren creates vested estate in grandchildren alive at testator's death subject to open and let in after-born grandchildren." *McArthur* v. *Scott,* 113 U. S., 380.

"A devise to two daughters, portion to each to be divided among her children after her death, creates vested interest in such children." *Canfield* v. *Fallow,* 57 N. Y. Sup., 149; aff'd 60 N. Y. Sup., 1134.

"A devise to a wife for life, then to son for life, then to grandchildren, creates a vested remainder immediately upon testator's death." *Woolley* v. *Paxson,* 46 O. S., 318.

"A devise to widow for life then to children 'or their heirs,' creates vested remainder in children on death of testator." *Bolton* v. *Ohio Nat. Bk.,* 50 O. S., 293.

And though the *Linton* v. *Laycock* case is distinguished in the *Barr* v. *Denney case*, 79 O. S., 358, the court hold in opinion on page 368, by converse, *that when a gift over in futuro is to* specified individuals or *to a definite class* the rule referred to in *Linton* v. *Laycock* applies and the legacy vests at the death of the testator.

In *Scott* v. *West*, 63 Wis., 569, the court makes same ruling as quoted in *McArthur* v. *Scott*.

By the provisions of the Byrer will, which I have classified as paragraph (5), the testator imposes conditions or limitations on the right of individual grandchildren to receive a portion in distribution.

This may fairly be considered as a condition subsequent by which the vested right may be divested.

If by reason of certain proscribed habits or characteristics a grandchild should be precluded from receiving a part in distribution he or she would simply be in position of a grandchild dying before time of distribution—losing his vested right and if leaving heirs they would not participate in the absence of statutory provision, the devise or bequest being definitely to grandchildren, as a class.

This condition as to participation shows a peculiar or eccentric mind in the testator, but it is clear and explicit, and was undoubtedly inserted by the testator with the hope that it might have a tendency to keep his grandchildren within the paths of virtue, sobriety and industry, until of mature years and established habits, if for no other reason than that they might not lose their vested right to participate in the distribution which was theirs by the terms of the will.

It cannot be said that the method of establishment of their right to participate in distribution is impossible of compliance.

The method is definitely stated and should be no more difficult than the establishment of an heirship in many cases.

The holding of the court is that the devise in remainder is to testator's grandchildren as a class; that such remainder, vested at the death of the testator in such grandchildren as

were then in being subject to open and let in after-born grand-children; that the conditions imposed are subsequent and for the purpose of divesting the right to participate in distribution of those who might not from their habits or characteristics be able to qualify as a distributee and that thereby their prior vested right might be destroyed; that the provisions as to such qualification are possible of determination from the terms of, and of carrying out in the manner provided in, such will.

Coming now to the questions of the claim that the provisions of the will, by these devises, violates the law as to alienation and perpetuities.

The court has examined carefully the many cases called to the court's attention, *pro* and *con,* and, without taking time or space to analyze in this opinion, the court is of the opinion that the terms of the will do not violate the rule in the respects mentioned; that the cases cited by plaintiffs practically all are based upon the common law rule or on statutes following same, narrower than the Ohio statute, and that they do not apply in this state.

The Ohio statute, G. C., 8622, reads:

"No estate in fee simple, fee tail, or any lesser estate, in lands or tenements, lying within this state, shall be given or granted, by deed or will, to any person or persons but *such as are in being or to the immediate issue or descendants of such as are in being at the time of making such deed or will;* and all estates given in tail shall be and remain an absolute estate in fee simple to the issue of the first donee in tail."

The common law rule as to perpetuities is not in force in Ohio, and has been abrogated by the statute (above quoted). *Turley* v. *Turley,* 11 O. S., 173; *Brasher* v. *Marsh,* 15 O. S., 103.

Clearly from the language of the will, the devisees are all within the protected class by the wording of our statute.

Counsel for plaintiff in argument urged that Section 8622, General Code, relates only to real estate and hence the common law of perpetuities as applied to personal property is still in full force in Ohio. Counsel on these premises argued fur-

ther that inasmuch as Mr. Byrer's will provided for the sale of his Cleveland real estate, and the distribution of the proceeds thereof among such of his grandchildren as can qualify, according to the requirements of the will, with respect to their personal habits and also with respect to their reaching the age of 30 years, the testamentary gift is thus made not a devise of real estate to which the statute General Code, Section 8622, would perhaps not apply, but a bequest of money or personal property to which the common law rule against perpetuities does apply, so that the bequest is rendered void and ineffectual.

This is an application of the doctrine of conversion in equity which the books do not countenance. It has been held that realty will not be regarded as converted into personalty before the time appointed for its conversion for the purpose of sustaining a testamentary disposition otherwise invalid, as violative of the New York or the common law rule against perpetuities. 20 L. R. A. (N.S.), pages 67-68. So conversely it must likewise be held that realty will not be regarded as converted into personalty by testamentary direction for the sale thereof, so as to invalidate an otherwise valid testamentary gift of such realty or its proceeds.

Not only is counsel's application of the doctrine of equitable conversion an erroneous application, but to the mind of the court his premises on which his reasoning is based are likewise erroneous. There is not a shred of authority to support his contention that the common law rule against perpetuities is still in force in Ohio so far as personal property is concerned. The right to make any testamentary disposition of property in Ohio is statutory, so that if the general statute, authoriizng the making of wills, should be repealed, there would be no law of wills in Ohio whatsoever. The *German Mutual Ins. Co. v. Lushey et al*, 66 O. S., 233, 239.

The power to make testamentary disposition is statutory, and so also are all the limitations upon that power which are enforcible in this state.

There is no rule against perpetuities as respects either realty or personalty, so far as Ohio is concerned, except Section 8622, formerly R. S., Section 4200, and this in the decision last above cited is referred to as a "notable limitation on testamentary disposition."

There are numerous cases in Ohio which necessarily involve this understanding of our law of wills.

*Hamilton* v. *Rodgers*, 38 O. S., 242, is a case where, "By his will, R. devised his whole estate, consisting principally of personal property, to trustees with directions to pay certain annuities out of the income of the estate, and after the final cessation of said annuities, to distribute the estate among certain children and grandchildren of the testator, then living, and the heirs of the body of those deceased, and, in default, of such hiers, their brothers and sisters." This will was upheld although, if the common law rule against perpetuities applied here to personalties, it would clearly have been invalid.

Some of the cases where an equitable conversion of realty is involved are cases wherein the interests in remainder were vested at the death of the testator; and some are cases where the remainder vests only at the termination of particular estates. *Barr* v. *Denney*, 79 O. S., 358, is the most recent decision of the Supreme Court of Ohio of the latter sort.

*Richey* v. *Johnson*, 30 O. S., 288, is a case where the testamentary gift was held by virtue of the doctrine of equitable conversion to be a bequest of personal property; but the remainder there is a contingent remainder which, if the common law rule against perpetuities had any application to personalty within the state of Ohio, would have rendered such contingent remainder void.

There are many cases of this kind in Ohio, most of which are reviewed in *Barr* v. *Denney, supra*. It is clear from the foregoing that counsel's contention in regard to the common law rule against perpetuities being defeasive of the remainders provided for by the Bryer will, because such remainders are to be deemed personalty under the doctrine of equitable conversion

is wrong.   His premises and his conclusions are wrong, both on principle and on authority.

Again, the ultimate beneficiaries might elect to take the land itself instead of its proceeds.  *Holt* v. *Lamb,* 17 O. S., 374. The Supreme Court of Ohio has never applied the common law rule against perpetuities to personal property, and if it had done so, as pointed out above, the decision in several cases should have been different.

Compare *Richey* v. *Johnson,* 30 O. S., 288, with *Collier* v. *Grimesey,* 36 O. S., 17, where the ultimate interest in the proceeds of the land to be sold was held to be vested at the death of the testator instead of contingent as in the former case.

See also concerning equitable conversion, *Geiger* v. *Bitzer,* 80 O. S., 65, at pages 84-5.

From all of the foregoing it is the holding of the court that the will does not violate the Ohio law as to alienation and perpetuities.

Naturally from such holdings plaintiffs are held not to be entitled to an accounting from any of the defendants.

Having arrived at such conclusion it is unnecessary to go into detail as to the defense of estoppel set up in the answer of the guardian *ad litem* and the amendment to the answers of the defendants Edmund K. Byrer et al, but the court might say, in passing, that it is of the opinion that from the acts alleged in the third defense of the guardian *ad litem,* and in the first amendment of the amendment to the answer of Edmund K. Byrer et al., sustained by evidence presented the plaintiffs, should be and are now estopped from seeking to have declared void, by an alleged construction, the will of Henry J. Byrer.

Coming now to the fifth defense in the answer of the guardian *ad litem* and the second amendment of the amendment to the answer of Edmund K. Byrer et al. and the prayer of each, as a cross-petition, for a forfeiture of all rights of plaintiffs as legatees under the will of Henry J. Byrer, for disobedience of its provisions as to contest or interference with the administration of the estate as directed by such will, and the further

prayer for an accounting and recovery from said plaintiffs of money received by them from the estate.

It will be noted from the prayer of such answers that such relief is claimed and asked for only in the alternative, "in the event that the court should decree that any part of said will, or any attempted disposition of property undersaid will is void."

On account of the nature of such prayer, and the court not holding any part of such will or disposition of property void, it is unnecessary to quote the provisions of the will referred to nor to pass upon the question of forfeiture or such relief asked for.

In concluion, for the reasons heretofore given, the findings herein on the issues joined are in favor of defendants and against plaintiffs.

An entry may be prepared construing the will as heretofore indicated, or general finding in favor of defendants and against plaintiffs, and that plaintiffs' petition be dismissed at their costs. Exceptions may be noted. Entry may include filing and overruling of motion for new trial or rehearing with exceptions.

If plaintiffs desire to appeal the amount of appeal bond is fixed at $1,000.00.