OPINION OF THE COURT
Joseph S. Mattina, S.
This matter was brought before the court by the petition of *106 Marine Midland Bank, N. A., for the judicial settlement of its account as executor of the estate of William Jackson Goodrum. By decision dated September 9, 1996, which decision constituted the order of this court, we held that a construction of Article third of the decedent’s will is necessary before the petitioner can distribute the residuary estate. Accordingly, we are treating the accounting petition as if it requested a construction of the testamentary provision in question. In addition, we determined that the parties to be served in the combined proceeding should include all cousins named in Article third of the will who survived the decedent.
None of the parties, other than the petitioner, appeared on the return date of the citation. At that time, the petitioner noted that its position on the will construction is reflected on the distribution schedule included in its account, to wit, that the residuary shares of cousins Louisa Cowart and Eugene McGee have lapsed. After hearing oral argument and receiving a further written submission from the petitioner, we reserved decision.
William Jackson Goodrum died on August 17, 1994, leaving a will dated February 14, 1990. Preliminary letters were issued by this court on September 21, 1994. Petitioner received full letters testamentary on November 16,1994. The first paragraph of Article third of the decedent’s will provides for a distribution of the residuary estate to "such of the following individuals as shall be living at the date of distribution of my estate” and to certain charitable organizations. Under subsequent paragraphs, six named cousins of the decedent each receive 21h% of the residue. A friend of the decedent receives 1%, with the balance to be distributed 60% to the North Carolina Engineering Foundation, Inc., and 24% to Theta Tau Professional Engineering Fraternity. The final paragraph of Article third provides as follows: "If any of the foregoing bequests to individuals shall lapse because the intended beneficiary was not living at the date of distribution of my estate, I direct that the share which would have gone to such deceased beneficiary shall be paid and distributed in the proportions of seventy per cent. (70%) to north Carolina engineering foundation, inc. and thirty per cent. (30%) to theta tau professional engineering fraternity for the purposes previously stated.”
Two of the cousins named in Article third predeceased the decedent. Cousin Louisa Cowart died on December 28, 1994, three months after the issuance of preliminary letters, while *107 cousin Eugene McGee died on April 4, 1995, 61/2 months after such letters were granted. Two cousins, Floyd McGee and Mary McGee Me Leod, are still living.
In a construction proceeding, the court seeks to determine the intent of the testator. Such intent "must be gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed.” (Matter of Fabbri, 2 NY2d 236, 240 [1957].) We must first attempt to discern testamentary intent from the four corners of the will itself, searching for a dominant purpose or plan of distribution and reading and giving effect to individual parts in relation to that purpose. (Roe v Vingut, 117 NY 204 [1889]; Matter of Watson, 262 NY 284 [1933]; Matter of Debout, 35 AD2d 1067 [4th Dept 1970].) In the instant case, the decedent’s will, viewed in its entirety, offers ample evidence that his intent was primarily to benefit the engineering college which he attended and an engineering fraternity. Fully 84% of his approximately $1 million estate passes to these educational-charitable entities. The decedent saw fit to remember his cousins and a friend with minimal, essentially token, portions of the residue. Moreover, he conditioned these bequests upon each individual’s survival to a certain point, to wit: "the date of distribution of my estate”, with a gift over to the same charities in slightly different proportions, if a cousin or friend should die before such time. The legacy for any named cousin therefore does not vest indefensibly on the decedent’s date of death, but only after his or her survival to the estate’s date of distribution. (See, Matter of Grieve, 186 Misc 601 [Sur Ct, NY County 1945].)
It remains, therefore, to determine what the decedent meant by "date of distribution of my estate”. We are loath to interpret such terminology as indicative of some indefinite point in time, delineated only by the relative speed with which the executor pursues the administration of the estate. Rather, we believe that the decedent intended to condition the bequests to his friend and cousins on their survival to some fixed point. EPTL 11-1.5 provides for just such a fixed period in the course of the administration of every estate: the so-called creditors’ waiting period, which expires seven months from the date of issuance of letters testamentary. At this seven-month point the executor can be required to make distribution of legacies.
A review of case law reveals that phrases analogous to that at issue in the case at bar appear with some frequency in *108 contingent bequests and that there is precedent for an interpretation of "date of distribution” as a date seven months from the issuance of letters. (See, for instance, Matter of Augustine, 87 Misc 2d 184 [Sur Ct, NY County 1976]; In re Powers’ Estate, 98 NYS2d 457 [Sur Ct, NY County 1950]; Matter of Grieve, supra; In re Denton’s Will, 46 NYS2d 145 [Sur Ct, Queens County 1943].) Precedent is of little utility, however, in construction cases, since every will is unique. And there are circumstances in the instant case that prompt a slightly different interpretation of this decedent’s wishes. Here, the seven-month period was initiated by the issuance of preliminary letters on September 21, 1994, more than a month after the decedent’s death. Cousin Louisa Cowart died December 28, 1994, only three months later, so that there can be little doubt that the decedent would intend that her bequest should lapse. Cousin Eugene McGee, however, died April 4, 1995, about two weeks short of the expiration of the seven months. Had the executor filed for preliminary letters three weeks before he did, Mr. McGee would have survived beyond the seven months, and a not insignificant legacy of about $20,000 would have vested prior to his death and passed to his estate.
We earlier suggested that the decedent would not have wished the determination as to whether an individual’s legacy vested to be made by the relative speed with which the executor administered his estate. The New York County Surrogate’s Court has expressed a similar belief quite emphatically: " 'It would violate public policy to permit an executor to exercise any power to determine by his acts who shall receive the legacy and who shall not.’ ” (Matter of Augustine, supra, at 185-186, quoting Matter of Palermo, NYLJ, Oct. 21, 1965, at 18, col 4.) And yet, to measure the seven-month period from the date the executor actually filed for preliminary letters in the instant case would be to invest this executor with just such power. Accordingly, we will look to the earliest date at which the executor could have sought preliminary letters, rather than the date more than a month later when it actually did so, to initiate the seven-month period. Such a date, we believe, would be the day after the date of the decedent’s death, or August 18, 1994. Seven months from this date would be March 18, 1995. Since Eugene McGee survived several weeks beyond March 18, his share of the residue vested in him and will pass to his estate. Any other result, in the instant circumstances, would be inequitable, as well as contrary, we believe, to the decedent’s intention.
*109 Wherefore, Article third of the will of William Jackson Good-rum is hereby construed to provide that the residuary share of any individual named in such article who is not living on the date on which the executor could be required to make distribution of the estate shall lapse and be distributed 70% to North Carolina Engineering Foundation, Inc. and 30% to Theta Tau Professional Engineering Fraternity. The date on which the executor could be required to make distributions shall be seven months from the earliest date on which the executor could have obtained letters, or March 18, 1995.
Since Louisa Cowart died well before such date, her share of the residue shall lapse and pass in the proportions stated to the engineering foundation and to the engineering fraternity. The share of Eugene McGee, who died after such date, however, shall be deemed to have vested and shall be distributed to his estate.
The executor is hereby directed to modify the schedule of distribution attached to the accounting to reflect such construction and to make the actual distributions accordingly.