## SUPREME COURT.

### THE RECTOR, &c., OF TRINITY CHURCH agt. THE MAYOR, &c., OF NEW-YORK.

*Lots* " appropriated, set apart and devoted as a situation for a building for public worship to be erected thereon ;" and lots " appropriated for the uses and purposes of a *cemetery*, a *keeper's house*, and a *chapel* erected for religious services at interments," are not exempt from *taxation* under the statute in relation to the assessment and collection of taxes. (1 *R. S.* 388.)

Because, the statute declares that every building for "*public worship*, and the several lots whereon such buildings are situated, shall be exempt from taxation." Now " vacant lots" is not a building for public worship, however appropriately dedicated to be used for the erection of such a building ; neither is a ".chapel," erected for religious services at interments in a cemetery, a place of " public worship" in the sense contemplated by the statute, and of course the lots appurtenant to the chapel, as well as the chapel itself and the keeper's house, are subject to taxation.

Where taxes have been *assessed without objection* or *appeal*, although subsequently .paid under protest, they can not be recovered back.

*New-York Special Term*, 1854.    Demurrer to complaint. The facts will sufficiently appear in the opinion of the court.

DANIEL LORD, *for plaintiffs.*
ROBERT J. DILLON, *for defendants.*

ROOSEVELT, Justice.    The statute, in relation to the assessment and collection of taxes, (1 *R. S.* 388,) declares that every building for public worship, *and the several lots whereon such buildings are situated*, shall be exempt from taxation ; and the question is, whether certain lots of ground, between Hudson, Le Roy and Clarkson-streets, thirteen in number, belonging to the corporation of Trinity Church, come within the terms of the exemption.

The Rector &c., of Trinity Church, agt. The Mayor, &c., of New-York.

Having paid the tax under protest, compulsorily as they allege, to avoid a sale, the church brings the present suit to recover back the amount, $971.28, with interest, averring in their complaint that, as to the nine lots on Hudson-street, they were appropriated, set apart and devoted as a situation for a building for public worship to be erected by the plaintiffs; and as to the other four, they were "appropriated for the uses and purposes of a cemetery, a keeper's house, and a chapel erected for religious services at interments;" and insisting, under this statement, that the whole premises were exempt from taxation.

This simple statement, it seems to me, disposes of the first branch of the claim. It is too clear for argument, that a *contemplated* structure, resting merely in imagination, no stone of which has ever been laid, or even extracted from its primitive quarry, is not such a building for public worship as an assessor is bound to see.· When actually erected, it will be time enough for the officer of the law to notice it. As yet, it is merely a spiritual manifestation—"situated" no where—certainly not on the nine "lots," and visible only to the eye of the mind, if indeed it be visible distinctly even to that. The law, to warrant the claim of privilege, requires an actual building—a house made with hands—not eternal in the heavens, but temporal, situated on temporal "lots," resting not on intention, however pious or praiseworthy, but on solid, sublunary earth.

As to the other four lots, as I understand the complaint, they are actually devoted to the purposes of a *cemetery*. Now cemeteries, as such, except in the case of cemetery associations, formed under the general law, are not exempt. Does, then, the mere erection on them of a burial chapel confer the privilege?

Such a building, it is obvious, is a mere incident to the cemetery. It is erected, not, in the sense of the statute, as a place of "public worship," but, in the very language of this complaint, "for religious services at interments." All religious services, no doubt, more or less, partake of the nature of religious worship; but all are not "public worship." A building for public worship is an edifice devoted primarily, if not exclusively, to church services generally. Upon any other interpre-

tation of the terms, as legal expressions, there would be no limit to the exemptions which might be claimed under them. Suppose a clergyman—as was proved on a recent trial—having a very extensive practice in matrimonial cases, should assign a particular room in his house, or, if necessary, his whole house, for religious services at interments of single women in the grave of matrimony—for marriage, it is said, is the burial of the separate existence of the sex—would such a devotion of the premises, however sacred, *ipso facto* convert the parson's dwelling into "a building for public worship?" and exempt it, and all the lots, however numerous, on which it might be situated, from all secular taxation?

By the words of the statute, it will be observed, that the lots, forming the situation of the church, are exempted as, and solely because they are, an appurtenance to the building: whereas, by the interpretation contended for by counsel, the building in the present case, called a chapel, is sought to be exempted, although, like the keeper's lodge, a mere appurtenance to the lots which form the cemetery. The argument, while it admits that the cemetery, as a principal, is not exempt, virtually asserts that the cemetery chapel, the mere incident, is exempt, and by force of its exemption carries with it the cemetery also. Such a mode of reasoning, as it seems to me, is unsound in itself, and clearly at variance also with the policy of the statute.

At all events the assessors, with whom the taxation in question originated, had jurisdiction of the subject. The property assessed was real estate within their ward. It was *prima facie* at all events, the proper subject of assessment; and having inserted it on their rolls, and given due notice calling for objections, they had a right to expect and to require, that if any special exemption was claimed, it should be presented and proved, to enable them to pass upon its truth and legality. The assessors, in such cases, are made by law the tribunal of first instance, with an appeal to the tax commissioners, and then to the supervisors of the county, and perhaps also, by certiorari, to the supreme court. Although possessed of only

limited jurisdiction, their action is still *judicial*, and cannot and ought not to be reviewed collaterally, and more especially, in favor of persons who, for aught that appears, raised no objections at the time when they might, and were invited to do so. The case of Madame Chegary's school on Union Square, recently decided by the court of appeals, (1 *Seldon's Rep.* 376,) in which a similar exemption was claimed in favor of her extensive establishment, as "a building erected for the use of a seminary of learning," was decided mainly on this ground. (*See also* 7 *Barb.* 133, *also* 127.) ·

Besides, statutes of exemption, conferring special privileges on the few, however deserving, at the expence of the many and to the prejudice of the equal rights of the general tax-payer, are to be construed strictly. They are not to be extended either by implication or by liberal construction.

My conclusion is, that the taxes in question were properly levied—that, at all events, having been assessed without objection or appeal, although paid subsequently under protest, they cannot be recovered back; and that, as a consequence, the demurrer of the corporation to the plaintiffs' complaint is well taken, and should be allowed.

Judgment for defendants.