### PEOPLE *ex rel.* HUTCHINSON *et al. v.* COLLISON, Assessor.

(*Supreme Court, Special Term, Onondaga County.* September, 1888.)

1. TAXATION—EXEMPTIONS—CHURCH PROPERTY.

> A building situated on a portion of the same lot with a church, and which is used exclusively as a residence for the pastor, is not exempt from taxation, under 2 Rev. St. N. Y. (7th Ed.) p. 982, § 4, as amended by Laws 1883, c. 397, p. 571, which ex-empts from taxation every building used for public worship and the lot whereon it is situated.

2. SAME—ASSESSMENT—OBJECTIONS WAIVED.

> In the absence of any complaint of excessive valuation, it will be presumed that the proper rule was adopted in making the assessment.

On *certiorari.*

The relators were trustees of a religious corporation which owned a lot or tract of land in the village of Phœnix, on one portion of which was situated a church, or building used solely for public worship, while on another portion of the same lot was a parsonage, or building used solely as a residence for the pastor. The respondent, being assessor, placed the parsonage on his assessment roll for 1888, at the valuation of $1,600, against the objection of relators, who seek by this writ of *certiorari* to strike out the assessment on the ground that the property is, by law, exempt from assessment and taxation.

*C. W. Avery*, for relators. *O. M. Reilly*, for respondent.

VANN, J. This proceeding presents the following question for decision: Where two buildings, belonging to a religious corporation, stand near each other, and upon the same parcel of land, one being used for a church and the other for a parsonage, is the latter exempt from taxation under the laws of this state? This precise question does not appear to have been passed upon by our courts, although the opportunities to raise it have been numerous and frequent. As recently said by one of the justices of this court, when considering a kindred topic: "The question has in this state usually been one of concession rather than litigation." *People* v. *Barber*, 42 Hun, 27, 31. Certain general principles, applicable to the subject of exemption from taxation, are, however, well established. Taxation is the rule, and exemption from taxation the exception. Every presumption is in favor of the tax, and against the exemption. A statute, in order to create an exemption, must be clear, explicit, and free from doubt. Its language is to be strictly construed, and must plainly express the intention of the legislature. If its meaning is doubtful, the decision of the courts should be against the exemption. The right must be expressly conferred, and it can never arise by mere implication. When, however, the power of exemption is clearly exercised by the legislature, effect must be given to it by the courts. These rules are applicable to religious, charitable, and educational corporations claiming exemption from taxation. The authorities upon the subject are uniform, and too numerous for convenient citation, but they can be found in nearly all the text-books, and especially in the following: Cooley, Tax'n, 146–152; Burroughs, Tax'n, 132–136; Blackw. Tax-Titles, (3d Ed.) 403–409; Browne, Assessm. & Tax'n, 20–34; Sny. Rel. Corp. 86. Our Revised Statutes provide that every building erected for the use of a college, incorporated academy, or other seminary of learning, and in actual use for either of such purposes, every building for public worship, every school-house, court-house, and jail used for either of such purposes, and the several lots whereon such buildings so used are situated, and the furniture belonging to each of them, shall be exempt from taxation. 2 Rev. St. (7th Ed.) p. 982, § 4, as amended by chapter 397, p. 571, Laws 1883. If a liberal construction of this statute would include a parsonage, under the description of a "building for public worship," upon the ground that it indirectly promotes that object, the strict construction that is uniformly applied to the subject by the courts of all the states and of the United States, without exception, does not permit that conclusion. A building used solely for a private residence, and in which public worship is never held, is not a building for public worship. The public have no more right to enter a parsonage occupied by the clergyman and his family, for public worship, than they have to enter the residence of any member of the congregation for that purpose. A parsonage is not used for public worship, but is simply the residence of the pastor, who conducts public worship in another building devoted exclusively to that object. As held by the court in the *Trinity Church Case*, 10 How. Pr. 138, "a building for public worship is an edifice devoted primarily, if not exclusively, to church services generally." A building may be used for worship, as every private house should be, but it is

public worship or religious services to which the public is admitted that is required by the statute. As pertinently asked by Judge PECKHAM in a recent case: "How can that worship be called 'public' to which the public is not admitted?" *Association* v. *Mayor, etc.*, 104 N. Y. 585, 12 N. E. Rep. 279.

If a religious association furnishes its pastor a house free of rent, the use of that house relieves the society from the payment of a salary that otherwise would be correspondingly larger. Thus the rental value of the parsonage is a part of the pastor's compensation. If he saw fit to board and lease the house to one, he would receive the rental value in money instead of actual use. If he let the house for some commercial purpose, the result would be the same. He would receive the rent as a partial compensation for his services, and the society would have to raise by ordinary methods so much less money. Thus we might have the extreme, but still possible, case where a part of the property of a religious corporation was used for a manufactory, the income going to the support of the pastor. Such a case, however improbable, would not differ in legal effect from the case under consideration, because, in either event, the rental value of the property claimed to be exempt would go to the support of the pastor, and thus, indirectly, promote public worship. The building would not, however, be used for public worship. Such a construction of the statute would prevent its meaning, and lead to a result never intended by the legislature. The statute, when strictly construed as the law requires, limits the exemption to a building actually used for public worship, and does not include a building the income or use of which is devoted to the support of the pastor. The severity with which the rule of strict construction has been applied is illustrated by the following cases: *Chegaray* v. *Mayor, etc.*, 13 N. Y. 220; *Association* v. *Mayor, etc.*, 104 N. Y. 581, 12 N. E. Rep. 279; *Cemetery* v. *City of Buffalo*, 46 N. Y. 506. The relators claim that the *Case of the Young Men's Christian Association*, 44 Hun, 102, recently decided by a divided court in the First department, is applicable to this proceeding. The decision in that case, however, was placed upon the ground that the building was used exclusively as a place for holding public worship and religious and social meetings, and for imparting religious and secular instruction to young men. In other words, it was used partly for public instruction and partly for public worship, and was held to be exempt upon both grounds. The *Case of Seminary of Our Lady of Angels*, 42 Hun, 27, is also cited by the learned counsel for the relators. This case was based upon the statute exempting every building erected for the use of a college, incorporated academy, or other seminary of learning. It is obvious that buildings erected for the use of schools, the subjects taught being unlimited, have a much wider range of uses than a building for public worship simply. Accordingly it was held that, in the case of a public seminary of learning, the statute makes no qualification of the purpose for which the lot and buildings might be used, other than that which is necessary or fairly incident to the objects of the institution, and that all lands and buildings used in the proper business of the institution were exempt from taxation. This case goes further than the court of appeals has yet gone, but not far enough to control the decision of the case at bar.

Although no case has been cited from the Reports of this state in which the exact question under consideration was determined, we are not without light upon the rule as settled in other states. Under a statute in Indiana exempting "every building used for religious worship,  *  *  *  and the lands whereon such building is situated, not exceeding 10 acres," (Rev. St. Ind. § 6276, subd. 6,) it was held that a parsonage standing within 12 feet of the church, and communicating with it by means of doors opposite each other, through which the pastor had access to his study in the church, and to the part of the church used for public religious services, was not exempt. *Trustees* v. *Ellis*, 38 Ind. 3. A statute of Massachusetts exempted "all houses of

religious worship." A congregation erected a building for that purpose, consisting of a cellar, basement story, and second story. The second story was used for a church, the cellar was used to heat the church by means of a furnace, but the basement story was rented for secular purposes, and the income used to pay for erecting the building and the support of public worship. It was held that the part that was rented was not exempt from taxation. *Proprietors* v. *City of Lowell*, 1 Metc. 538. The courts of Ohio, Michigan, and Missouri hold to the same effect. *College* v. *State*, 19 Ohio, 110; *Society* v. *Mayor, etc.*, 3 Mich. 172; *Wyman* v. *City of St. Louis*, 17 Mo. 335. Under a statute of Kansas exempting all property used for religious purposes it was held that a dwelling-house owned by the diocese of the Episcopal Church, and used by the bishop as a residence, was not exempt. The court said: "In this case the property is used as any other dwelling; and the use is not distinguishable from that of the residence of any other Christian pastor or Christian gentleman." *Vail* v. *Beach*, 10 Kan. 216. See, also, *State* v. *Ross*, 24 N. J. Law, 497; *Pierce* v. *Inhabitants of Cambridge*, 2 Cush. 611; *First M. E. Church* v. *City of Chicago*, 26 Ill. 482.

My conclusion is that the property in question is not exempt from taxation, and that the assessors simply did their duty in assessing it. The proper mode of assessing such property is to deduct the value of the part actually occupied by the corporation from the value of the whole estate, and the society should be assessed upon the value of the rest thus ascertained. Burroughs, Tax'n, 134; *Society* v. *Mayor, etc.*, 3 Mich. 172. As no complaint is made by the relators that the valuation is excessive or unjust, it is to be presumed that the assessors adopted the proper rule in making the assessment. The prayer of the petitioners is denied, and the writ dismissed.