ham v. Davenport, 147 N. Y. 43; Board of Missions v. Mechanics' Savings Bank, 40 App. Div. 120.

The referee has found, from all of the evidence taken before him, that it was not the intention of the depositor to give this money to the deceased, but that it was deposited by him for his own use, with the intention to remain the legal owner thereof, and a careful examination of the evidence sustains the correctness of his decision.

I have examined with care the very carefully drawn briefs of the contestants, but I do not think there is anything in the decisions which would warrant me in holding that this money was the property of the beneficiary.

The motion to confirm the report of the referee is granted.

Motion granted.

---

Matter of the Probate of the Last Will and Testament of AMASA HOWLAND, Deceased.

(*Surrogate's Court, Washington County, January, 1902.*)

TRUST—ACCUMULATION OF RENTS AND PROFITS DURING MINORITIES—SUPPORT OF INFANT BENEFICIARIES NOT PROVIDED FOR—SUSPENSION OF POWER OF ALIENATION—VESTING—PROVISION AS TO SURVIVORSHIP ON FAILURE TO REACH MAJORITY.

By the fifth clause of his will a testator bequeathed all his residuary estate to trustees with directions to them to manage, invest and reinvest it for the use and benefit of his grandchildren until they severally became twenty-one, directed that the whole fund be equally divided and paid over to them as they severally became twenty-one, and further provided that if either died before that age the whole fund should go to and belong to those who attained that age. Three infant grandchildren survived the testator.

Upon a construction of his will by the Surrogate,

Held, that the testator intended an accumulation of rents and profits for only such of his grandchildren as were in being at his decease and did not contemplate an invalid accumulation—for afterborn grandchildren, beginning at his decease and before their birth.

That the fact, that the trust did not authorize the trustees to apply any part of the income or of the corpus to the support of the infants, was not material as a court of equity could make them a proper allowance and the statutes provided for such an emergency.

That the power of alienation was not improperly suspended as the whole estate vested at the testator's death in the three grandchildren as tenants in common, the trustees taking no title except such as was necessary to control, management, investment and reinvestment.

That the will contained a present gift to the grandchildren and not a mere direction to divide and distribute at a future time.

That the validity of the provision as to survivorship need not be passed upon, the contingency not having occurred, but that the fifth clause was not invalidated thereby as the share of a grandchild dying before the age of twenty-one would go to the person presumptively entitled to the next eventual estate.

Reversed, 75 App. Div. 207.

Proceedings upon the probate of a will.

E. T. Brackett, A. D. Wait and G. M. Ingalsbe, for executors; Edgar Hull, for Fred D. Howland, individually; J. A. Kellogg (J. Edward Howland; S. Brown, of counsel), for contestant; L. H. Northrup, special guardian; W. L. Sawyer, for infant legatees.

Davis, S.—Upon the return of the citation in this case, the contestant files an answer to the petition, under section 2624 of the Code of Civil Procedure, asks for a construction of the residuary clause of the will, and that it be declared void. No question is raised as to the competency of the testator to make a will, and it is conceded that all the legal formalities were duly observed in the execution of the will. The fifth, or residuary clause, alone is challenged, which is as follows:

"*Fifth.* All the rest, residue and remainder of the property and estate, real and personal, of every description, and wherever situated, of which I may die seized or possessed, or to which I may be entitled at the time of my decease, I give, devise and bequeath to my sons J. Edward Howland, Frederick D. Howland, Grenville M. Ingalsbe and John E. Parry, in trust, how-

ever, for the uses and purposes hereinafter named, to hold, manage and control the same, and receive and invest the dividends, increase, rents and profits thereof, or therefrom from time to time, and the proceeds of, or any part of the same, that may be sold or disposed of, or keep the same invested, for the use and benefit of my grand-children, the children of my sons J. Edward Howland and Frederick D. Howland, during the time and until said children shall attain the age of twenty-one years severally; the whole amount of said property so bequeathed in trust, with the increase and accumulations (less all taxes, expenses and commissions properly chargeable thereto) to be equally divided between them, and paid over to said children, share and share alike, as said children severally become twenty-one years of age, absolutely, for their own property, but if either of said children (grand-children of mine) shall die before coming twenty-one years of age, then the whole of said residuary estate to go to and belong to the child or children of my said sons who shall attain the age of twenty-one years."

It is claimed that this clause offends against the statute, and is void, in that it is an attempt to create an accumulation of personal property that is unlawful, and also that it suspends the absolute ownership of personal property longer than two lives in being at the death of the testator.

It may be conceded, at the outset, that the clause is a perplexing one, and at the first reading our minds might incline to the conclusion that it ought not to be permitted to stand, but, upon a more careful reading, and upon the examination of the authorities, and the rules of construction that we are permitted to employ in cases of this character, the difficulties are more apparent than real, and finally disappear entirely, and leave nothing in the way of carrying out the intent of the testator as expressed in the will, and that, too, without violating or offending any rule or principle of law.

The testator died leaving two sons, J. Edward Howland, aged forty years, and Fred D. Howland, aged thirty-six years, as his only heirs-at-law and next of kin; both sons married, the elder having no children, the younger having three sons, names and ages, respectively, as follows: Amasa W. Howland, nine years; Frederick Arthur Howland, four years, and Richard J. Howland, three years, at the time of the testator's death. The plain intention of the testator, as is very clearly expressed in the fifth clause of his will, is, that the three grandchildren, the sons of Fred D. Howland, shall take the entire residuum of his estate, amounting, it is estimated, to about $500,000; but the grandchildren, being infants, and, by reason of such infancy, legally incapable of owning, controlling or managing their said estate, it became necessary that the testator, by his will, make some provision for the management, control and preservation of the infants' estate until the infants attained the age of twenty-one years, when the law would permit them to hold, control, manage, alien and enjoy their own property absolutely, so the testator named four persons as trustees, in whom he had confidence, to control, manage and preserve the estate of the infant legatees during their minority, and to distribute it to them severally as each attained the age of twenty-one years. Under the said clause, the trustees were given certain instructions as to the management of the estate, and were also clothed with some discretionary power.

The simple question presented to us for our consideration and decision, then, is this: Does this clause of the will in question direct, or authorize, the trustees to do anything that is unlawful, or that offends against the statutes, or, in other words, is it a valid trust?

It is argued that the clause in question directs an unlawful accumulation, in that it directs an accumulation for the benefit of after-born grandchildren, said accumulation to begin at the decease of the testator, and before the birth of such children.

No doubt, such a direction would be void (Manice v. Manice, 43 N. Y. 376), but, under plain and well-settled rules, we are not compelled to adopt such construction, because, upon the reading of the entire will, we are led to the conclusion that it was not the testator's intention to create an accumulation that was unlawful, and we are not permitted to impute unto the testator any unlawful or unreasonable intent. Upon an intelligent reading of the fifth clause, we think that it is plainly and clearly susceptible of the construction that the testator's intention was that it should refer to his grandchildren born during his lifetime, and in being at his decease. This construction, we think, viewed in the light of the surrounding circumstances, as disclosed by the proof given when the will was offered for probate, is more consistent with the testator's intention than any other. Such construction does no violence to the spirit or language of the clause, and relieves us from any such difficulty as was encountered in the case of Roe v. Vingut, 117 N. Y. 204, where the language used was "such grandchildren as may be born of my daughter   *   *   *   after my decease."

At the time of the execution of the will in question, the testator was not an aged man; he was active in business, and had no reason to suspect but what he might live for several years. Moreover, we cannot impute to the testator any unreasonable nor an unlawful intent to so dispose of his property by will as to offend against or violate the statute; but, on the other hand, we are bound to presume that his intent was to make such a will as could be carried into effect in every particular without violating or offending the statute, and the will must be given such construction, if possible. And it is one of the primary rules of construction that when a clause is susceptible of two constructions, one of which will render the will valid, and the other invalid, that construction will be adopted which will render the will valid, and prevent an intestacy in whole or in part. Roe

v. Vingut, 117 N. Y. 204. It may well be that, to take some portion of the clause in question separate, and disconnect it from the rest, and so construe it, we would be constrained to declare it void, but, read and construed as we have suggested, all difficulty disappears, and the opposite conclusion must be reached.

The precise question was before the Court of Appeals in Roe v. Vingut, *supra.* The language of the will in that case was so clear and emphatic as intending the accumulation for after-born grandchildren, to begin at the testatrix' decease, and before the birth of such children, as to leave apparently no possible room for construction, or doubt—"for the benefit of my grand-children, who may be living at the time of my death, during their respective minorities, and for the benefit of such other grand-children as may be born of my daughter, Sarah Augusta Vingut, after my death, during their respective minorities"—and yet confronted with such strong language as this, the Court of Appeals held, that, the will construed as a whole, it was not the testator's intention to provide for an accumulation for the benefit of grandchildren born after his decease. That case goes much further than we are required to do here. The validity of the trust clause in that will was upheld under much greater difficulties than we meet here, and under that decision we feel fully justified in holding the clause in question here valid as against the criticism that it attempts to create an unlawful accumulation, or suspension.

It is further urged that the clause should be held invalid for the reason that it makes no provision for the use of any portion of the *corpus* of the estate, nor of the income, for the benefit of the infant legatees during their minority; that the trustees are not permitted to use any part of the *corpus* or income for any purpose, save to invest and reinvest, and that the infant legatees might be put to disadvantage thereby. We do not think any danger need be apprehended in that regard, even in the absence of

any statute authorizing an allowance from the *corpus* or income of the estate for the education, maintenance and support of the infant legatees. A court of equity would have undoubted power, and, in a proper case made, would exercise that power in their behalf, by directing a proper allowance for their benefit. Indeed, the Real Property Law (Laws of 1896, chap. 547, sec. 52; 3 Heydecker Laws, 3808), as well as the Personal Property Law (Laws of 1897, chap. 417, sec. 5; 3 Heydecker Laws, 3901), make ample provision for the support and education of minors in cases of this character. The law provides for the infant's support and education, even if the will did not. While this question is really not before us for decision, yet the argument has been pressed upon our consideration with considerable vigor; so we have deemed it proper to refer to it here.

But the principal objection made to the clause in question is that it is an attempt to suspend the absolute ownership of personal property longer than two lives in being at the decease of the testator. As we construe the will, we think that it was the intention of the testator that the residue of his estate should vest in his three grandchildren as legatees at his death, and that they took the estate as tenants in common. Everitt v. Everitt, 29 N. Y. 39. The law favors the vesting of estates, and, unless the intention is unequivocally expressed to the contrary, it will not be imputed to the testator. McKinstry v. Sanders, 2 T. & C. 182. It is well settled that the law favors the vesting of estates at the death of the testator. Matter of Russell, 168 N. Y. 169-175, and cases cited. And the law will presume that the testator intended his estate to vest immediately at his death, unless it clearly and unequivocally expressed in his will to the contrary. McKinstry v. Sanders, *supra,* and affd. in Court of Appeals, 58 N. Y. 662.

We think it clearly untenable to claim that it was the intention of the testator that the title to the residuum of this estate should vest, or did vest, in the trustees. At most, their title is

temporary, and limited, and only for the purposes of control and management, to invest and reinvest during the minority of the infant legatees. The actual title and ownership vested in the three infant grandchildren, as legatees. At the death of the testator, the title of the residue of the estate vested in the infant legatees absolutely, the only limit being their infancy, and the testator appointed trustees to do only what the law would not permit the infants to do by reason of their infancy. It is true that, during their minority, the infant legatees could not control or alien their property, nor exercise their *jus disponendi,* but that was not the fault of the will. The law itself creates that disability; the will does not. The disability would exist, and the power of alienation would be suspended just the same, even if there was no will at all.

We think the proper construction of the will requires us to hold that the infant grandchildren, as legatees, took the residue of the estate as tenants in common, their shares being individual and several. When a tenancy is created, the law always presumes that a tenancy in common is intended unless the contrary is clearly and unequivocally expressed. The most that can be said in the present case is that the will is silent on the subject, hence, the well-settled rule of law requires us to hold that a tenancy in common was intended. Courts never favor a joint tenancy when the language permits of a tenancy in common. McKinstry v. Sanders, *supra,* and cases cited. The rule as to tenants in common is the same as to real and personal property. Mills v. Husson, 140 N. Y. 104. The statute declares that " every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be a joint tenancy." Real Property Law (Laws of 1896, chap. 547, sec. 56) ; 3 Heydecker Laws, 3809.

But the clause in question is challenged on the ground that its language does not import a present gift, but is only a direction to divide and distribute at a future time, and that, there-

fore, no present title vests in the grandchildren as legatees, and is consequently void. No doubt, the rule is correctly stated by the counsel for the contestant in his elaborate brief, but it must be observed that this rule is subordinate to the primary canon of construction, that the construction must follow the intent of the testator, to be collected from the whole will. Goebel v. Wolf, 113 N. Y. 405; Matter of Brown, 154 N. Y. 314. The last case cited is strikingly like the case at bar in its facts, the principal difference being that, in the Brown case, a life estate intervened before the estate descended to the grandchildren at all. But, as before observed, we think that the clause in question imports a present gift, and not simply a direction to divide at a future time. It may well be said in the case at bar, as was said by Judge PAIGE in the case of Tucker v. Bishop, 16 N. Y. 405, "This is the ordinary case of an absolute gift of a legacy accompanied by a direction postponing the time of payment; as, for instance, that it be paid when the legatee attains the age of twenty-one. In all such cases, the time of payment is not of the substance of the gift, and does not postpone the vesting of the legacy." The trustees are appointed by the testator simply to preserve the integrity of the gift until such a time as the law will permit the infant legatees to enter upon the full enjoyment and control of their property.

Let us suppose that, in this case, the decedent had died intestate, leaving as his only heirs-at-law and next-of-kin these same three infant grandchildren, and that this same estate had come to these grandchildren by descent instead of by will. How absurd it would be to argue that the grandchildren could not take the property because the absolute ownership and power of alienation would be suspended longer than the law would permit in the case supposed, the title would vest in the grandchildren as tenants in common instantly, on the death of decedent. Of course, the court would have to appoint a trustee, guardian, or some officer, to act as officer of the court to care

for and preserve the estate until the infants attained their majority, and that is precisely what the testator has done in this case, and what substantial difference is there between the case supposed and the case at bar? We see none.

Suppose the testator had, by this same clause of his will, bequeathed the same residuary estate to these three grandsons, and had omitted to appoint trustees or guardians. What court would for a moment listen to argument that the bequest must be forbidden, and prevented, because it would offend the statute? Such a doctrine, carried to its logical conclusion, would make it impossible for a grandfather to make a bequest to his infant grandchildren. In such a case, the court would not stop to inquire about unlawful suspensions, or alienations, but would proceed at once on petition so to do, and appoint trustees or guardians to care for and preserve the estate, and see to it that the grandchildren received their estate at their majority. This is exactly what the testator has done in his will, and yet we are asked to hold that the testator has attempted to do an unlawful thing. This would, indeed, be a hard decision to make.

If it be said that the will does not provide for the education and support of the infants during their minority, as before observed, it must be answered that the law makes ample provision on that subject. In a legal sense, minors are the wards of the courts, and the court will watch with jealous care the interests of its wards, and has the power on its own motion to protect the person and property of minors.

The only difference in the case supposed and the case at bar is the descent of the estate in case of the decease of one or more of the minors, during minority. In the case supposed, the estate would go to the heirs-at-law, or next of kin. In the case at bar, the will provides that, in case of the death of one or more of the minors, during minority, that the share of the one dying shall go to the survivor, or survivors; but, if we are correct in our conclusion that the estate vests in the minors

as tenants in common at the decease of the testator, the difference referred to is of very little, if, indeed, of any, importance at all, and, even if the direction of the testator as to his property, in case of the death of one or more of his minor grandchildren during minority, is defective, and cannot be fully carried into effect, we do not feel called upon to ruthlessly demolish the entire scheme of the will, and so almost entirely destroy and frustrate the entire will of the testator. The case is not so desperate as that. The right to own, control and dispose of property by will is too sacred and solemn a right to be frittered away by exceptions and limitations, or because some direction of lesser importance of the testator cannot be fully carried into effect.

In the case supposed, strictly and accurately speaking, there would be no suspicion of absolute ownership, nor of the power of alienation, in a legal sense, at all. Neither is there in the case at bar. The title of these three infant grandchildren to the residuary estate of their grandfather is as valid as if the estate had come from him to them by descent, instead of by will.

It may be argued with some confidence that there are some directions of the testator in his will that cannot be carried into effect. Even if that were so, we do not deem that a sufficient reason for declaring the clause void. We would rather invoke the aid of the ancient, but by no means obsolete, rule of *cy-pres,* which has been stated as follows: " Where the disposition made by a testator of his property is contrary to the rules of law, as to the estates granted by him, courts, for the purpose of carrying into effect the general intent of the testator so far as possible (*cy-pres*) adopt that construction of the devise which will most nearly conform to the general intent of the testator, though in part it defeats his particular intent." Jackson v. Brown, 13 Wend. 437-445. In the case cited, the rule was applied where the difficulties were far greater than exist in the case at bar. But it may be argued that the intent of a testator to have the

residuum of his estate vest in his infant grandchildren at his decease, as tenants in common, is inconsistent with his direction as to the disposition of the estate in case of the decease of one or more of the minors during minority, to wit: the share of the one dying shall go to the survivors. We could with no great impropriety dismiss this point entirely by saying that that question is not necessarily before us for decision, as the contingency suggested may never arise. It is hoped that it never will, but, recognizing the possibility that it might, we are not compelled to hold the clause void, nor declare an intestacy. In such an event, the share of the one dying would go to the person presumptively entitled to the next eventual estate. It was so held in Delafield v. Shipman, 103 N. Y. 463-469. Cook v. Lowry, 95 id. 103-108. The rule is the same in cases of personal as of real property.

In construing the clause in question in connection with the rest of the will, different minds would be very likely to reach opposite conclusions, and each could give equally good and, apparently, unanswerable reasons for his opinion, and perhaps the construction, equally consistent with the expressed intent of the testator, would be different from what we have adopted here, and yet, if such construction leads to the practical destruction of the clause in question, while the other construction preserves it, and prevents an intestacy in whole or in part, we feel constrained, under well-settled rules, to adopt the construction that will save the will in its entirety. As was said by Judge PECKHAM, in Roe v. Vingut, 117 N. Y. 212: "To accomplish such object the meaning of words and phrases used in some parts of the will must be diverted from that which would attach to them if standing alone, and they must be compared with other language used in other portions of the instrument, and limitations must be impaired, and thus the general meaning of all the language must be arrived at." In the same case, it was further observed by the same judge (which

language was used in construing a difficult will, and is very pertinent to the case at bar): "A construction quite inconsistent with that which has been here adopted might be supported by many and weighty arguments. It would, perhaps, came as near to the intention of the testatrix as the one we have adopted. But it would also render the turst illegal and utterly destroy the provisions of the will. The construction which has been herein adopted brings us, we think, quite as near the intention of the testatrix as the other would have done, and neither construction can be said to do violence to her intention, so far as that intention can be discovered from a most attentive examination of the instrument itself. This makes it a strong and clear case for the application of the doctrine already alluded to, and brings us to the point of adopting that construction which, while doing no violence to the intention of the testatrix, at the same time sustains the trust and the devise mentioned in the will, rather than defeats them."

The decedent in the case at bar desired that, at his decease, the residue of his estate should go to his grandchildren, who are minors, and, to accomplish that object, adopted the only effective method of accomplishing his cherished purpose, to wit: make a will, and appoint proper persons to care for and preserve the estate during their minority. What reason the testator may have had for thus disposing of his property is not a proper subject for judicial inquiry. Any reason that was sufficient for him must be sufficient for us. It certainly does not seem to have been from any lack of affection or confidence in his sons' ability or integrity, as both sons are made executors as well as trustees, with quite large discretionary power. At the time of the execution of the will in question by the testator, his mental powers were in their full strength; he was aided in its preparation by a very able and experienced lawyer, a circumstance we have a right to consider when we are asked to condemn the will. The testator had been for half a century

active in business, and by his great ability had amassed a fortune of half a million dollars, or more, and he had a right to dispose of it by will, as he saw fit, provided no rule of law was violated in so doing. The right to own, control, dispose of or give away property is a right that does not come from the statute; it is a natural and inherent right, which cannot be taken away or interfered with, except, under stress of circumstances, public policy may require it.

It is argued that it offends public policy to allow this vast estate, or a portion of it, to be idle, and withdrawn from the channels of business and trade, until the youngest child (now four years) reaches the age of twenty-one; that such a policy, carried to its logical conclusion, would result fianlly in paralyzing all industries, and civilization would be at a standstill. Not by any means need such results follow. There is no reason to believe but what this estate will be just as active and valuable for all public and business purposes, in the hands of the trustees, as it would have been of there had been no trust created, but the estate had passed absolutely to other hands immediately upon the decease of the testator.

It has not been practicable, within the limits of this opinion, to discuss more than a very few of the vast number of authorities that have been cited in the elaborate and able briefs of counsel. Suffice it to say that the authorities cited have all been carefully examined with the aim of discovering the right principles of law and equity, as well as the correct rule of construction, to be applied in this class of cases, and, thus fortified, to consider the questions presented to us for decision.

The case of Bindrim v. Ullrich, recently decided by the Appellate Division, in the Second Department, has been called to our attention since the oral argument, reported in 64 App. Div. 444.

That case is plainly distinguishable from this, as there was in that case the life estate of the wife intervening between the

testator's decease and the vesting of the estate in the infants, a feature not found in the case at bar. In fact, in the most of the cases cited by the contestant there was an intervening life estate before any vesting in the minor grandchildren.

We hold that the fifth, or residuary, clause creates a valid and legal trust, and that the will, in its entirety, must be admitted to probate.

Probate decreed.

---

## EXEMPTION OF RELIGIOUS SOCIETIES AND INSTITUTIONS FROM TAXATION.

### GENERALLY.

A religious institution is not exempt from a transfer or inheritance tax merely because its general property is exempt from general taxes. In re Kavanaugh, 6 N. Y. Supp. 669.

Where church property is abandoned and dismantled, exemption ceases. Gibbons v. District, 116 U. S. 404.

Where a State constitution provides for the taxation of all property, without making any exceptions, church property is not exempt. Franklin v. Manchester, 60 N. H. 342.

Under a statute exempting property used exclusively for religious or educational purposes one use need not be entirely exclusive of the other and a building for religious purposes is exempt from taxation, although it is also used for educational purposes, so long as such use is merely incidental or occasional, or if habitual is merely permissive and does not interfere with the use for religious purposes. St. Mary's v. Tripp, 14 R. I. 307.

### WHAT INCLUDED UNDER RELIGIOUS SOCIETIES AND PROPERTY.

Organizations of a benevolent, missionary or charitable character held to fall within the term religious. Hebrew F. S. Assn. v. New York, 4 Hun, 446.

A place of public worship held to be any house or building which is actually and exclusively used for the holding of religious services. Black v. Brooklyn, 51 Hun, 581.

Where the Religious Society of Friends owned 467 acres of land on

which it conducted an institution for the education of Indians, raised crops on 80 acres of plow and meadow land and used a number of acres of cleared land for the pasturage of stock, the plow and meadow lands and the pasture land producing more than sufficient for the requirements of the school and the surplus being sold and devoted to school uses; 50 acres used as a wood lot for sole use of institution; remainder being timber land producing no revenue; held that only the 80 acres of plow and meadow land and the pasture land were exempt from taxation. People v. Barton, 63 App. Div. 581.

A mission house adjoining the corner of a church building, having a chapel in daily use for religious services, in which women and children are constantly received for counsel and advice, and which is used for meetings by missionary and charitable guilds connected with the church, held exempt from taxation under the Taw Law, although the sisters who have charge of it reside therein, their residence being necessary and an incident to the work carried on by the church therein and not an appropriation for other than religious purposes. People v. Feitner, 168 N. Y. 494.

A clergy house which adjoins a corner of the church building, in which is located the choir and vestry, the first floor of which is used for a Sunday school and for other religious services and can be used as part of the seating capacity of the church, the second occupied as a chapel, the third by the men's guild, the fourth by curates who assist in carrying on the work of the church, and the fifth by an engineer who has charge of the heating and mechanical apparatus of the entire building is exempt from taxation, the residence of the curates and the engineers being incidental to the work carried on by the church therein. People v. Feitner, 168 N. Y. 494.

The Salvation Army, under its act of incorporation, is exempt from taxation on both its real and personal property " to the extent that, and so long as " it is used exclusively for certain specified purposes. People v. Feitner, 33 Misc. 712.

A charter provision authorizing a camp-meeting association, organized for religious, moral, charitable and benevolent purposes, to hold exempt from taxation for the purposes thereof, real and personal property not exceeding in value a certain specified sum, held not to exempt from taxation a stock of groceries and food supply owned by the association and currently sold on the grounds to all persons desiring to purchase. Alton v. Alton, 69 N. H. 311.

Funds or property donated or bequeathed to a religious society, and held in trust for it or by way of endowment, the society devoting the income thereof exclusively to its religious uses, held to be entitled to share in the exemption of the society's other property from taxation. State v. Silverthorn, 52 N. J. L. 73.

A publishing house, incorporated as an arm of the Methodist church, for the manufacture and distribution of books, the dessimation of religious knowledge and with the purpose that the produce of the house shall be appropriated for the benefit of superannuated preachers, is a religious institution. M'. E. Church South v. Hinton, 92 Tenn. 188.

The grounds of a camp-meeting association are not exempt under a statute exempting " all church property actually and exclusively used for public worship." People v. Watseka, 160 Ill. 576.

A camp-meeting association whose lands are not leased or otherwise used for profit is held exempt as an institution of " purely public charity." Avis v. Cincinnati, 57 Ohio St. 257.

## WHAT NOT INCLUDED.

A chapel in an orphan asylum is not exempt as a place of public worship where the only religious services held therein are provided for the benefit of the inmates, and the public are expressly excluded except under pressing and peculiar circumstances: Colored v. New York, 104 N. Y. 581.

A rectory which is a separate building located on a corner of the church is not exempt, except as specified in subd. 9, sec. 4 Tax Law, exempting from taxation dwelling houses and lots of religious corporations while actually used by the officiating clergyman thereof, when it is used by the rector as his dwelling house and although his constant attendance may be necessary in the performance of his duties, the church cannot be considered as carrying on a work therein which renders the residence of the rector necessary or incidental thereto. People v. Feitner, 168 N. Y. 494.

Land purchased by a religious society for the express purpose of building a church thereon, and intended to be used for that purpose when the necessity arises, held not to be exempt. Trinity v. New York, 10 How. Pr. 138.

Where a dwelling is erected upon the land of a camp-meeting association under a parol license or lease for a money consideration, the land is subject to taxation because not occupied by the association for its own purposes within the meaning of the statute. Foxcroft v. Straw, 86 Me. 76.

A janitor's residence, built on the church lot, but separate from the church building, held not exempt. Pittsburgh v. Pittsburgh, 10 Pa. Super. Ct. 302.

A Y. M. C. A. building containing a gymnasium, bowling alley and bath room, twenty-two other rooms, only one of which was devoted to purposes of public worship, which was also used as a lecture hall, held not to be exempt from taxation under the general act exempting " every building for public worship." Y. M. C. A. v. Mayor, 113 N. Y. 187.

## TAXABLE UNDER TRANSFER TAX.

The McAuley Water Street Mission, originally organized under chapter 319 of the laws of 1848, and now subject to the provisions of the membership corporation law, is not a religious corporation or a corporation organized exclusively for Bible and tract purposes and bequests to it are subject to the transfer tax. Matter of White, 118 App. Div. 869.

Where a devisor directed the purchase by his executors of certain bonds, and the payment from the income thereof of a life estate, and at the death of the life tenant, to distribute the proceeds of such bonds to a certain church corporation " towards the building of a new church or the renovation of the present one," held that such legacy was subject to taxation under the Collateral Inheritance Act of 1885; that the interest of the church in said legacy was personal property, and could not become real estate until actually invested in real estate as directed by the will; that the exemption from taxation of any building used for public worship did not constitute a general exemption of the church from taxation within the meaning of the exception in the Collateral Inheritance Act. In re Van Kleeck, 121 N. Y. 701.

Missionary societies and Christian associations are not religious corporations within the meaning of section 221 of the Tax Law exempting such corporations from the transfer tax imposed by that law, and legacies to them are subject to the tax where the testator died subsequent to the passage of chapter 382 of the laws of 1900, which deprived such societies of the exemption theretofore existing under section 4 of the Tax Law. Matter of Watson, 171 N. Y. 256. (Reversing same case, *supra*, in text.)

The buildings of a young men's Christian association, held not to be within the application of a statute exempting all buildings used exclusively for charitable purposes. Paterson v. Patterson, 64 N. J. L. 361.

## NOT TAXABLE UNDER TRANSFER TAX.

The legislature has the power to exempt bequests to a religious institution from imposition of an inheritance tax. State v. Henderson, 160 Mo. 190.

Money legacies to the Young Men's Christian Association of Brooklyn, the Brooklyn Society for the Prevention of Cruelty to Children and the Young Woman's Christian Association of Brooklyn, given by the will of a testatrix who died after chapter 368 of the laws of 1905, amending section 221 of the Transfer Tax Law took effect, are not taxable thereunder. Matter of Moses, 60 Misc. 637.